VERPLANCK and others, *vs.* THE MERCANTILE INSURANCE COMPANY OF NEW YORK and BARKER.

---

The relation of *cestuis que trust* and trustees does not exist between stockholders of an incorporated company and the corporation itself; nor are they in the relative situation of partners; nor are the stockholders creditors of the company.

The latter is merely the creature of the law, a politic and not a natural body. It is made up by the compact entered into by the stockholders, each of whom becomes a corporator identified with and forming a constituent part of the corporate body.

When a corporation aggregate is formed and the management and control of its officers are in the hands of directors, the latter become the agents and trustees of the corporators and a relation is created between the stockholders and those directors, who, as trustees, become accountable for dereliction of duty and violation of trust.

An equitable jurisdiction over directors is expressly given by statute (2 R. S. 462.) But it should not be exercised unless the directors are parties and called upon to answer individually. The court will then deal with them personally.

Chancery cannot interfere to restrain the operation of a chartered company or to wind up its concerns, unless under the special authority of the R. S. and where the case is fairly brought within their scope and object. The causes are: 1. That the company is insolvent, i. e. unable to pay its debts. 2. Where there is a violation of any of the provisions of its charter. 3. Where there is a violation of any act of the Legislature which is binding upon the company.

The words " *it shall and may be lawful*" for a company to set apart a fund to be held and pledged for payment of annuities and losses on lives, do not necessarily render the doing of the thing spoken of imperative. But until a separate fund is created, the whole capital and property of the company is bound for all annuities and insurances on lives. When such fund is created, then it alone will be bound.

Where a company is restricted from dealing " *in the purchase or sale of any stock or funded debt whatsoever created or to be created by or under any act of the U. S. or of any particular state,*" with power to sell, transfer and again invest their capital : such company may deal by investment in the stock of the U. S. Bank or in the stock of the banks or monied corporations of any particular state.

When there is a fraudulent purchasing of stock of a company by its officers with the funds of the company, the remedy is not against the latter in its corporate character but against the directors by whom the fraud may have been committed or through whose management the loss has been sustained.

1831.

VERPLANCK
*v.*
MERCANTILE
INS. CO.

---

The complainants having amended their bill in pursuance of leave granted, (*see ante p.* 46.) a motion was now made by them, as stockholders of the Mercantile Insurance Company, for an injunction to restrain the further operations of the company and for the appointment of a receiver of all its property and effects, with a view (after payment of debts) to a distribution among the stockholders generally : in effect, to dissolve the corporation and wind up its affairs. The application was allowed to be made under the directions of the Chancellor (*see* 2 *Paige's C. R.* 453 ;) and it came on before the Vice-Chancellor upon an order to show cause, accompanied by a variety of affidavits and papers made out for the purpose of supporting the application.

Mr. *S. Sherwood,* for the complainants.

August 25,
26,27,29,30,
1831.

*Incorporated Company.*
*Jurisdiction.*

Mr. *D. Selden*, for the company.

Mr. *Jacob Barker*, in person.

THE VICE-CHANCELLOR. (*a*)

The subject has undergone a most elaborate discussion.

I proceed, after a careful examination of the facts and an attentive consideration of the whole case, to dispose of this matter according to my best judgment. And in doing so, I shall have a due regard to those rules of law which govern this court in the exercise of its jurisdiction over corporations.

This company was incorporated, with very extensive powers, by an act of the Legislature in 1818, and with a capital of $500,000, divided into shares of $50 each. It was to be managed by twenty-one directors, chosen annually; each director to be a holder of at least fifty shares of stock; and immediately after each election they were to choose from their own body a president and an assistant. The charter does not expire, as originally limited, until the year 1840. Jacob Barker is named as one of the original directors who were to hold office until January, 1820.

The bill alleges, that the company was organized in pursuance of its charter; and that its operations were carried on for several years, apparently justly, with the public and profitably to the stockholders. Also, that from about the year 1825, to the present time, Jacob Barker has continued to be one of the directors; and, for the whole or most part of the period, he has been the assistant president. It is silent as to whether he was or was not a director from the year 1820 to 1825. For the causes stated in the bill, he is made a defendant in his individual capacity, and in that way called upon, with the company in its corporate name, to answer the charges

*1831.*

VERPLANCK
*v.*
MERCANTILE
INS. CO.
*September* 12.

---

(*a*) The case of *Verplanck* v. *The Mercantile Insurance Company of New York*, 2 *Paige's C. R.* 438, had not been published at the time Vice-Chancellor McCoun gave the above opinion.

contained in the bill. Before examining the nature of these charges, the manner in which they are made or how far they are met, denied or explained, it is necessary to look to the jurisdiction of this court in cases of complaint against corporations and to see upon what ground such jurisdiction rests?

It is said by the counsel for the complainants, that this court can interfere by virtue of its common law powers; and that enough is shown in the present case to entitle them to an injunction and a receiver upon the principles which govern all cases of fraud or trust where the fund or property in question is proved to be in danger or where the interests of those concerned imperiously require it. If the parties stood in the relation of partners to each other, or as *cestuis que trust* and trustees, or if the complainants were creditors of the company, I should have no difficulty as to the power and duty of the court. But I apprehend no such relation exists between the stockholders and the corporation. The latter is merely the creature of the law, a political not a natural body, made up of the compact entered into by the stockholders, each of whom becomes a corporator identified with and forming a constituent part of the corporate body: and therefore, when we speak of stockholders and the incorporated company of which they are the components, we refer to one and the same collection of persons. How then can the relation of trustees and *cestuis que trust* exist? for such a relation requires separate and distinct persons or separate and distinct bodies to constitute it. Neither does such an association create a partnership among the stockholders; nor, the relationship of debtor and creditor. But when a corporation aggregate is formed, and the persons composing it—either in virtue of their compact or by the express terms of the charter—place the management and control of its affairs in the hands of a select few, so that life and animation may be given to the body, then such directors become the agents and trustees of the corporators and a relation is created, not between the stockholders and the body corporate, but between the stockholders and those directors who, in their character of trustees, become accountable for any wilful dereliction of duty or violation of the trust reposed in them.

1831.

VERPLANCK
v.
MERCANTILE
INS. CO.

I see no objection to the exercise of an equity power over such persons in the same manner as it would be exercised over any other trustees. Such a jurisdiction is now expressly conferred by the Revised Statutes (*vol.* 2, *p.* 462) ; and—save in a few enumerated particulars—I consider it only declaratory of a previous power. This authority, however, should not be exercised unless the directors are parties to the suit ; nor without calling upon them individually to answer the complaint. The court would then deal with them personally. But it cannot interfere with the chartered rights and franchises of a corporation. It has no such jurisdiction at common law. That I am correct in this view of the case, is, I think, abundantly shown by authorities. In the case of *The Attorney General* v. *The Utica Insurance Company,* 2 *J. C. R.* 371, the question of equity jurisdiction over corporate bodies was fully examined by Chancellor Kent. He there held, that the jurisdiction of chancery over corporations ought to be confined to the plain and ordinary head of equity which makes the persons, who from time to time exercise the corporate powers in their character of trustees, accountable to this court for a fraudulent breach of trust ; and that when the question arises whether a corporation has forfeited its charter, usurped a franchise or broken a penal law, this court is not the proper tribunal to sustain a prosecution or inflict the punishment. The attorney general acquiesced in this decision. He, afterwards, resorted to the supreme court ; and there prosecuted with success an information in the nature of a *quo warranto.* There are two cases, which occurred in this court, before Chancellor Sanford, wherein he unhesitatingly adhered to the doctrine thus held by his predecessor. The first is *The Attorney General* v. *The Bank of Niagara,* 1 *Hopk.* 354. In this case, the attorney general, by the direction of the Legislature, had filed an information in the supreme court against the bank, for the purpose (in effect) of vacating and annulling the charter. He then filed a bill in this court for an injunction to restrain the bank, in the mean time, from issuing notes, receiving deposits or making discounts. The Chancellor held it to be very clear that the court had no jurisdiction to grant the injunction. He said, it

might in some cases be useful to possess the general power of superintending the proceedings of corporate bodies: but the power had not been given to the court by any statutory provision nor was there any thing in the English decisions to warrant the application in the case before the court. The application for the injunction was denied. This decision was made in the month of March, 1825; and it was probably owing to the refusal of the court to interfere in such cases that the bill " to prevent fraudulent bankruptcies of incorporated compa- "nies and to facilitate proceedings against them, &c." was introduced and became a law on the 21st day of April following (48 *Sess.* 448.) The 17th section first conferred upon chancery its jurisdiction over incorporated monied institutions; pointed out the remedy to be pursued, upon an application by the attorney-general or a creditor; and gave this court authority to interfere by injunction and receiver. The other case before Chancellor Sanford is one wherein the new power conferred by this statute was invoked: *The Attorney General* v. *The Bank of Chenango, Hopk.* 598. There, a bill was filed to obtain an injunction and a receiver: upon the ground of the insolvency of the bank. It will be seen, the Chancellor particularly said, the power which the court was then moved to exert was the new power conferred by the Legislature, and that the general jurisdiction of this court as a court of equity extended not to the case.

After such repeated decisions, expressly disclaiming all jurisdiction over corporate bodies for the purpose of restraining their operations or of winding up their concerns under the general equity powers of the court, the complainants must not expect any interference, except it be under the special authority of existing statutes and where the case is fairly brought within their scope and object. It is unnecessary to go back to the act of 1825: for the substance of it has been introduced into the Revised Statutes (*supra*). They have conferred upon the court a general superintending and visitatorial power over all corporations and their directors, managers, trustees and officers. The 39th, 40th, 41st, and 42d sections, (vol. 2 p. 463, 464) contain all that is immediately applicable to the present case.

1831.

VERPLANCK
*v.*
MERCANTILE
INS. CO.

Whenever, by those sections, any such corporation as the Mercantile Insurance Company " shall become insolvent or unable " to pay its debts, or shall have violated any of the provisions " of its act or acts of incorporation or of any other act binding " on such corporation the court of chancery may, by injunction, " restrain such corporation and its officers from exercising any " of its corporate rights, privileges, or franchises, and from col- " lecting or receiving any debts or demands, and from paying " out or in any way transferring or delivering to any person " any of the moneys, property or effects of such corporation, " until such court shall otherwise order," (§ 39). The injunction is to issue on the application of the attorney general, in behalf of the state or " of any creditor or stockholder of such cor- " poration" upon bill or petition, and upon " due proof" of any of the above facts (§ 40). The court may appoint a receiver, with a view to a distribution of the property among the stockholders, after payment of debts—as in the case of a voluntary dissolution of a corporation (§ 41, 42).

Hence, the court will be authorized to grant an injunction in the present case, if any of the following grounds of complaint are made out by " due proof," namely : 1. That the company is insolvent—in other words, unable to pay its debts. 2. That there is a violation of any of the provisions of its charter. 3. That there is a violation of any other act of the Legislature which is binding upon the company.

I. It is not alleged or pretended that the company is insolvent. There is nothing to show it owes any debts ; and so far from an inability to pay any which might be outstanding, it appears and is admitted, that the stock is worth, to the present stockholders, about fifty per cent. of its par value.

I must, therefore, pass to the next enquiry : which is a much more grave and important one.

II. Has this company violated any of the provisions of the act of incorporation ? The complainants allege it has done so by granting life annuities without having set apart or appropriated any portion of the capital as an annuity fund. Among the powers given to this company is one for the making of insurances upon lives and granting annuities. " It shall and may

"be lawful for the company to set apart and appropriate "one hundred thousand dollars of its capital, and which may "be increased from time to time by other appropriations "to two hundred and fifty thousand dollars, to be denomi- "nated the annuity fund; the whole to be invested in bonds "and mortgages of real estate and be held and pledged as a "fund for the payment of annuities and losses on lives, and in "no case to be liable for the other debts, contracts, liabilities "and engagements of the company." It appears, the company have granted three annuities upon lives: one, in the year 1822, of $300 per annum; another, in the same year, of about $77; and the third in 1824 of $100 per annum—to commence in 1837. According to the affidavit of William R. Thurston, the president, no annuities have been granted by the company since he came into office, in the year 1826. Those now in being, therefore, were granted before the present officers of the institution had the management of it and long antecedent to the passing of the revised statutes, It is very questionable whether these statutes have a retrospective effect—so as to work a forfeiture for previous acts. But I do not see how it is a violation of the charter to grant annuities without first appropriating a fund. The power to grant annuities is expressly given, without annexing (as a condition) the first setting apart of an annuity fund. The whole of the capital of the company is undoubtedly appropriated, in the first instance, to the general business of the corporation; but the power is given to the company to set apart a portion or portions of its capital to one particular object. The words "it shall and may be lawful" for the company to do a thing, do not necessarily render it imperative: they leave it optional with the company. It appears to me the legislature would otherwise have enjoined them in express terms to make the appropriation or have annexed a condition precedent or proviso to the enacting clause for them to have created a separate fund for the purpose, before they entered upon that branch of business. I think, according to a fair and rational construction of the act, it was not unlawful to grant annuities before making the appropriation. Until a separate fund is created, the whole of the capital or property of

the company is bound for all annuities or insurances upon lives; but when such fund is created, then it alone will be bound. The company may still set apart a portion of capital for those objects; and they are bound, at all events, to make some appropriation or arrangement, by way of security, before the expiration of their charter in one thousand eight hundred and forty.

The next charge of a violation of the charter is, the buying or selling of goods, wares, and merchandize: it being declared unlawful for the company to deal, use or employ any part of their stock, funds or moneys in such business. The allegation in the bill on this subject is in very general terms; and it is upon the information and belief of the complainants. This is met and positively denied in the affidavit of the president; and there is no evidence before me contradicting him. I must have proof of the fact before I can say the act of incorporation has, in this particular, been violated.

I pass to another allegation of their having violated the provisions of the act, in respect to the buying and selling or investing their money in stock or funded debt: the company being expressly prohibited from dealing "in the purchase or sale " of any stock or funded debt whatsoever created or to be " created by or under any act of the United States or of any " particular State." Notwithstanding this, they are permitted to purchase and hold any such stock or funded debt, for the purpose of investing any part of their capital funds or moneys therein, instead of vesting the same in and upon real security. And they are permitted to sell out and reinvest the same in similar stock or funds whenever the exigencies of the company or a due regard to the safety of its funds shall require it. The question is not as to the difference between buying and selling of stock and purchasing and holding it, (the distinction being very manifest,) but the point presented under this clause of the charter is, what is "stock or funded debt created by or under " an act of the United States or of any particular State?"— for this company has dealt largely, by investment, in the stock of the United States Bank as well as in stock of other banks and insurance companies incorporated by the legislature of

this State. It is insisted, that "stock or funded debt" in which this company are authorized to deal, for the purpose of investment, means only funded debt of the general or State governments, and not ordinary bank stock or the stock of monied corporations. If this be a true construction, the company have undoubtedly violated one of the provisions of their charter. It is very important to settle this question correctly.

1831.

VERPLANCK
v.
MERCANTILE
INS. CO.

At the time of incorporating the company, there was a large funded debt of the United States; and the word "stock" might well apply to such debt. Congress had also authorized the creation of another kind of stock, namely, the capital stock of the United States Bank and to which the term would equally well apply. I can discover no good reason why the words used should receive such a limited construction as to exclude the stock of the United States Bank. Can it be supposed the legislature intended to confine the company in their investments to government stocks alone? If so, it appears to me they would have treated the investments thus to be made as permanent investments. We find, however, the company is authorized to sell and transfer and again invest their capital whenever and as often as the exigencies of the corporation or a due regard to the safety of the funds should require it. The legislature, therefore, contemplated something more than the funded debt of the general and State governments. Besides, the words used are broad enough to admit of such an interpretation: "stock or funded debt" are not necessarily convertible terms; they may be read distributively. Upon the whole, I am satisfied it would be adopting too harsh and rigid a construction to say, that the company might not lawfully invest their funds in the stock of the United States Bank and in the stock of the banks or monied corporations of any particular State. The only limitation which I can perceive is this, that the investments must be made in stock or funded debt created or to be created within the United States by Congress or some State legislature. This, of course, prevents the company from dealing in foreign stock or funds. I come to this conclusion the more readily, because I find the legislature declare (in the last section) how the charter shall be construed in all

1831.

VERPLANCK
v.
MERCANTILE
INS. CO.

courts and places, namely, benignly and favorably for every beneficial purpose. When I consider that a contrary conclusion would, in effect, subject the corporation to a forfeiture of its charter, (not for any direct violation in terms, but by adopting one of two meanings of words and that meaning the most limited in sense and application) I cannot reconcile it to propriety and justice to adopt it.

III. As to a violation of some other act of the legislature which is binding on the company. It is declared by the revised statutes (vol. 1, p. 589, § 1.) that it shall not be lawful for the directors of any monied corporation to apply any portion of their funds, except surplus profits, directly or indirectly to the purchase of shares of its own stock. This provision was not in the statute of one thousand eight hundred and twenty-five.

It is perhaps unfortunate for the complainants that the title of the statutes in which this clause is contained does not apply. to the present company: for all monied corporations existing on the first day of January, 1828, are expressly exempted from its operation (1 R. S. 599, § 52.) The complainants, however, say, the purchasing the stock of the company with its own funds is a fraud by the directors upon the other stockholders. I can easily imagine how it may be so in some instances and why it may prove injurious to the interests of the latter. But there is no evidence before me of any such design; and it is not very apparent how the purchase of the shares of its own stock has been detrimental to the interests of the stockholders. And even if it were proved, the remedy, I think, is not against the company in its corporate capacity, but against the directors by whom the fraud may have been committed or through whose management the loss has been sustained. The statute makes them personally accountable; and, therefore, the application to this court must be made in a different form.

I have now gone through with the examination of this case, so far as respects the corporation, the jurisdiction of the court over them, and the grounds upon which such jurisdiction is to be exercised in behalf of stockholders. I have shown, that this court has no jurisdiction over corporate bodies, either under the

principles of the common law or through its general equitable powers for the purpose of restraining their operations with a view to a dissolution or to take away corporate rights and franchises; and that it is only by the statute and for the particular causes there enumerated (to be made out by due proof) that the court can entertain jurisdiction. The complainants, according to my conclusion, have entirely failed in making out such a case, under the statute, as entitles them to a present interference of the court.

1831.

VERPLANCK
*v.*
MERCANTILE
INS. CO.

There is ample provision made for another course of proceeding; and to which the stockholders may resort for the accomplishment of their object, if a majority desire it. I allude to an application, by petition, to dissolve the corporation. It may be made whenever a majority of the directors shall deem it beneficial to the interest of the stockholders to have the corporation dissolved. If the present directors do not make such an application, the time will come when the stockholders can exercise their own power and elect other directors, who may be convinced of the propriety of such a measure.(*a*)

I must deny the motion for an injunction and the appointment of a receiver. But as it has involved the merits of the whole case and the suit is still pending, the costs of the motion must abide event.

---

(*a*) The court here went on to scrutinize charges made against the defendant, Jacob Barker, and considered them unsupported by evidence or falsified by countervailing proof. But as this part of the enquiry did not involve any important principles of equity or law, the reporter has not detailed it.