Henry P. Denike et al., Appellants, v. The New York and Rosendale Lime and Cement Company et al., Respondents.

| 80 | 599 |
|----|-----|
| 111 | 64 |
| 80 | 599 |
| 125 | 34 |
| 80 | 599 |
| 126 | 45 |
| 80 | 599 |
| 132 | 221 |
| 80 | 599 |
| 136 | 641 |

A forfeiture of the franchises of a corporation, unless there be special provision by statute, can only be enforced by the sovereign power to which the corporation owes its life, in some proceeding instituted in behalf of the sovereignty.

A portion of the stockholders of a manufacturing corporation cannot maintain an action to dissolve it; nor have they, in the absence of proof of fraud, mismanagement or wrong-doing on the part of its directors, an absolute right to have a receiver of its property appointed; and this, although the corporation be utterly insolvent: it is at least discretionary with the court.

Under the provisions of the statute (1 R. S., 604, § 4; 2 id., 463, § 38), providing that a corporation shall be deemed or adjudged to be dissolved, when it shall have remained insolvent, or neglected or refused to pay its notes or evidences of debt, or suspended its business for one year, a corporation cannot be said to have committed an act of insolvency, or to have neglected or refused to pay its obligations, because its demand notes remain outstanding until payment has been demanded.

*It seems,* that a manufacturing corporation may temporarily lease its property to some person who will continue and carry on its business.

If, however, such a lease is unlawful, it does not give a portion of the stockholders a standing in a court of equity to ask for a dissolution of the corporation.

In an action brought by stockholders of a manufacturing corporation among other things to set aside a mortgage executed by it upon its land and property, the complaint alleged that the written assent of two-thirds of the stockholders was not first obtained and filed as required by the statute (chap. 517, Laws of 1867, as amended by by chap. 481, Laws of 1871), and that it was not given for a valid debt of the company. These allegations were denied by the answer. The referee found that the mortgage was given and taken in good faith, and that the company received in cash the whole amount secured. Judgment of foreclosure had been obtained upon the mortgage. There was no proof and no finding, or request to find, as to the assent. *Held,* that it was to be presumed, in the absence of proof, that the required assent was obtained and filed; also that it was for the plaintiff to prove that the mortgage was neither given to secure a debt of the company, nor that the money obtained was used to pay debts; that the judgment of foreclosure, unless impeached, was conclusive against the corporation and its stockholders as to the validity of the mortgage, and the burden of impeaching it was upon plaintiffs.

(Argued March 17, 1880; decided April 6, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendants, entered upon the report of a referee.

The nature of the action and the facts appear sufficiently in the opinion.

*John J. Macklin,* for appellants. If the facts proved show a surrender in fact, a dissolution must be decreed. (*Slee* v. *Bloom,* 19 John. R., 474; Potter on Corp., § 686; Angell & Ames on Corp., §§ 772, 773, 777, 778; *Brandt* v. *Benedict,* 19 N. Y., 93; *Canal Co.* v. *R. R. Co.,* 4 Gill. & Johnson [Md.], 1, 5, 122; *Briggs* v. *Penniman,* 8 Cow., 387; *Bank of Poughkeepsie* v. *Ibbotson,* 24 W. R., 473; *Kincaid* v. *Dwinelle,* 59 N. Y., 549, 553; *Webster* v. *Turner,* 12 Hun, 264; 2 R. S. [Edmonds' ed.], 482; 1 id., 560, § 4; *Wilde* v. *Jenkins,* 4 Paige, 481; *People* v. *Bank of Hudson,* 8 Cow., 217; *Attorney-General* v. *Bank of Niagara,* Hopk., 454; 11 Paige, 126.) The relation of trustee and *cestui qui* trust exists even though a corporation is not dissolved, so that the court may, upon general grounds of equity, interfere to enforce and protect the rights of any one interested in the administration of the trust. (*Brewer* v. *Boston Theatre Co.,* 104 Mass., 378; *Mawsini* v. *Goldthwait,* 34 Tex., 135; 7 Am. Rep., 281; *Heath* v. *Erie Co.,* 8 Fletcher, 347; *Dodge* v. *Wolsey,* 18 How. [U. S.], 321; *Mott* v. *Pa. R. Co.,* 2 Pa., 1; *Manderson* v. *Com'l Bank,* 28 Penn.; *Beaman* v. *Buford,* 1 Sim. [U. S.], 550; *Much* v. *Brinkerhead R. Co.,* 5 De Gex & S., 562; *Mosely* v. *Alston,* 1 Phil., 790; *Wood* v. *Draper,* 24 Barb., 187; *Robinson* v. *Smith,* 3 Paige, 222; *Peabody* v. *Flint,* 6 Allen, 52; *Carpenter* v. *N. Y. and H. R. Co.,* 5 Abb., 251; *Cross* v. *Sachept,* 2 Bosw., 617; *Prouty* v. *South R. Co.,* 4 N. Y. [Supreme], 231; Moak's note, 14 Eng., 81–85.) The right to institute the proceedings under the statute is not restricted to the attorney-general; a stockholder may sue. (Act of 1825, p. 449; 1 R. S., tit. 5th, p. 179; 2 id., art. 2, p. 602; 5 Edmond's edition

of Stat., 537, 538; 1 id., R. S., §§ 10, 11, 12, p. 73; *Mickles* v. *Rochester City Bank*, 11 Paige, 122, 126; *Howe* v. *Deuel*, 43 Barb., 505; *Ward* v. *Sea Ins. Co.*, 7 Paige, 294.) These rules have not been changed by later legislation. (Old Code, § 430; *Crittenden* v. *Nelson*, 5 Cow., 165; *Van Vliet* v. *Slauson*, 45 Barb., 307; Potter's Dwarris, 275, note; 1 Laws of 1870, 421.) As between the parties to the notes, they were due at the dates thereof, and a cause of action at once accrued. (*Wheeler* v. *Warner*, 47 N. Y., 520; *Howland* v. *Edmonds*, 24 id., 307.) The company, a year prior to the bringing of the action, having neglected or refused to pay its notes, was insolvent for that time. (Bump's Bankruptcy, 535, 595; *Ferry* v. *Bank of Central New York*, 15 How. Pr., 445, 452; *Galway* v. *U. S. Steam Sugar Refining Co.*, 21 id., 313; *Brouwer* v. *Harbeck*, 9 N. Y., 589, 594.) Plaintiffs were entitled to the appointment of a receiver upon the facts found by the referee. (Code of Procedure, § 244, sub. 417; Bliss' Code, 732, note; *Howe* v. *Deuel*, 43 Barb., 503.) The transaction with Harvey was *ultra vires*, illegal and fraudulent. (R. S., § 4, tit. 4, chap. 18, part 1; *Robinson* v. *Bank of Attica*, 21 N. Y., 406; *Butts* v. *Wood*, 37 id., 317; *Verplanck* v. *The Mercantile Ins. Co.*, 1 Edw. Chy., 84; *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 68; Moak's note, 14 Eng., 84, 85; *Carpenter* v. *Black Hawk Mining Co.*, 65 N. Y., 43.) Although Bell was a party to the transaction, he has a right to ask the protection of the court. (*Bissell* v. *Michigan R. R. Co.*, 22 N. Y., 273 285, 289; *N. Y. and Oswego R. R. Co.* v. *Van Horn*, 57 id., 473, 476; *Hutchins* v. *Hubbard*, 34 id., 24.) Any one of the stockholders, whether a party to the act or not, may maintain an action to set it aside. (Selden, J., in *Bissell* v. *Michigan R. R.*, 22 N. Y., 273, 285; *Union Bridge Co.* v. *Troy R. R.*, 7 Lans., 240.)

*Henry P. Wells*, for corporation, respondent. An involuntary dissolution of a corporation can only be had at suit of the attorney-general. (2 R. S. [6th ed.], § 20, p. 393; *Gilman* v.

*Greenpoint Sugar Co.*, 4 Lans., 482.) The power of the court to interfere with the management of corporations is purely statutory. (*Robertson* v. *Bullion*, 11 N. Y., 243, 252; *Galway* v. *U. S. Sugar R. Co.*, 13 Abb. Pr., 211; S. C., 36 Barb., 256, 259; *Att'y-Gen.* v. *Utica Ins. Co.*, 2 Johns. Ch., 370; *Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch., 84; *Ferris* v. *Strong*, 3 id., 127; *Bangs* v. *McIntosh*, 23 Barb., 598; § 244, Code; *City of Rochester* v. *Bronson*, 41 How. Pr., 78; *Gilman* v. *Greenpoint Sugar Co.*, 4 Lans., 482, 483; *Ramsay* v. *Erie R. R. Co.*, 7 Abb. Pr. [N. S.], 181; 52 Barb., 637; 36 How. Pr., 129; *Howe* v. *Deuel*, 43 Barb., 504.)

*George E. Horne*, for respondent, Harney. It is always admissible to show, *aliunde*, the minutes, what occurred at the meetings of trustees of a corporation when the minutes omit any part of the occurrences. (*Moss* v. *Averill*, 10 N. Y., 450, 454; *Am. Ins. Co.* v. *Oakley*, 9 Paige, 496; *Trustees St. Mary's Church* v. *Cagger*, 6 Barb., 576.) The mere fact that Harney was a trustee does not render the mortgage illegal or void. (*Culbertson* v. *Wabash Nav. Co.*, 4 McLean, 544; *Moneypenny* v. *Hartland*, 1 Car. & P., 352.) Where a corporation has received the benefit of, and has profited by a contract, alleged to have been *ultra vires*, neither it nor any of its members can, for that cause, repudiate the contract on their part and have relief in a court of equity. (Story's Equity Juris., § 1546; *Union Bridge Co.* v. *Troy, etc., R. R. Co.*, 7 Lans., 240; *Parish* v. *Wheeler*, 22 N. Y., 494; *Hodges* v. *N. E. Screw Co.*, 3 R. I., 9; *Graham* v. *Birkenhead*, 6 Eng. Law & Eq., 132; *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 62; *Greenpoint Sugar Co.* v. *Whitney*, 69 id., 328.)

EARL, J. The complaint in this action alleges that the New York and Rosendale Lime and Cement Company was a corporation organized in February, 1873, under the general manufacturing law of 1848 and the acts amendatory thereof;

that the plaintiffs were stockholders in the company; that the company owned for the purpose of its business, in Ulster county, valuable lands, buildings and machinery; that in January, 1874, the company executed to the defendant Harney, who was then a trustee of the company, a bond, and, as collateral thereto, a mortgage upon its land and property for $20,000; that a large portion of the sum secured by the mortgage was for an alleged debt incurred by the company on account of an illegal and fraudulent purchase from him of 110 shares of the capital stock of the company for more than it was worth; that two-thirds of the stockholders did not assent to the giving of the mortgage, as required by the statute; that the business of the company had been unsuccessful and unremunerative, while exorbitant salaries were paid; that a lease of the property of the company had been made by its officers a few months before the commencement of the action for a small rental, and that the company had virtually suspended its business and was not engaged in any active business; that on the 31st day October, 1876, defendant Harney commenced an action to foreclose his mortgage, and in November thereafter obtained judgment of foreclosure; that defendant Tompkins was the president of the company, and that on the 23d day of November, 1876, he recovered a judgment against it for $33,699.45, upon notes which are referred to, and it is alleged that the judgment was collusive, illegal and void, and that at the time of the commencement of the action upon the notes, the company was insolvent and unable to pay its debts, and that the actions upon the mortgage and upon the notes were instituted and prosecuted for the purpose of divesting the company of its property and absorbing the proceeds thereof, and wiping out and extinguishing the interests of the plaintiffs and of such other stockholders as were not combining and confederating with Harney and Tompkins; and the plaintiffs demand judgment that the mortgage and judgment of foreclosure and the lease and the judgment in favor of Tompkins be vacated and cancelled; that the trustees and officers of

the company account for their management and for the disposition of the funds and property of the company ; that the company and its officers be restrained from exercising any of its corporate rights or franchises ; and that the company be dissolved, and that a receiver of its property be appointed.

The defendants appeared and denied all the material allegations of the complaint upon which any claim for relief was based.

The cause was referred to a referee, and he decided the same against the plaintiffs. There was no proof or finding, and there was no claim upon the argument before us, that there was any illegality or fraud in the judgment obtained by Tompkins, or in the lease which was executed to Hiram Snyder, and hence they need no further notice.

The mortgage to Harney was executed to him in pursuance of a resolution adopted at a regular meeting of the directors, and it was signed by the plaintiff Bell, who was then president of the company. The referee found, upon evidence entirely sufficient, that the mortgage was given and taken in good faith, and that it was free from any fraud ; that the company received in cash the entire amount of the $20,000 secured thereby ; and that it was intended to promote the interests of the company, and that such interests were not injured thereby. There was, then, no ground upon which the mortgage could be impeached, unless it be upon the ground that the written assent of stockholders owning at least two-thirds of the capital stock was not first obtained and filed in the county clerk's office, as required by chapter 517 of the Laws of 1867, as amended by chapter 481 of the Laws of 1871; or upon the ground that the mortgage was not executed " to secure the payment of any debt " of the company, as also required by those laws. It was alleged in the complaint that the requisite assent of stockholders was not obtained ; but such allegation was denied in the answer. There was no proof whatever in reference to it, and there was no finding by the referee, and there was no request of him to find anything in reference to it. It must, after judg-

ment of foreclosure has been regularly obtained upon the mortgage, be presumed, in the absence of all proof, that the assent was obtained and filed. The judgment, unless impeached in some way, is conclusive against the corporation and all its stockholders as to the validity of the mortgage ; and if the plaintiffs sought to impeach it on the ground that the mortgage was given without the requisite assent, they should have proved it. The burden of impeaching the mortgage and judgment was upon them. For the same reasons, if the plaintiffs claimed that this mortgage was not given to secure the payment of any debts of the company, they should have proved that it was neither given to Harney to secure any debt due to him, nor that the $20,000 was used to pay debts of the company : (*Carpenter* v. *The Black Hawk Gold Mining Co.*, 65 N. Y., 43.) Their proof did not go to this extent, and there was no finding or request to find that it did. Therefore, without determining whether these plaintiffs were so situated that they could in this action have assailed this mortgage and the judgment, if it had been found that the requisite assent had not been given, and that the mortgage had not been executed to secure the payment of debts of the company, we are of opinion that no error was committed by the referee in denying the relief claimed by the plaintiffs in reference to them.

It must now be considered whether these plaintiffs as stockholders can maintain this action for the dissolution of the corporation and the appointment of a receiver, and for thus winding up the affairs thereof.

A corporation owes its life to the sovereign power, and under what circumstances it shall forfeit or be deprived of that life, depends upon the same power. A corporation may be dissolved by forfeiture through abuse or neglect of its franchises ; but such forfeiture, unless there be special provisions by statute, can only be enforced by the sovereign in some proceeding instituted in its behalf. Here there is no allegation in the complaint that this corporation had forfeited its charter, or that it had in any way become dissolved ; but

a portion of the relief prayed is that it be dissolved. All the stockholders uniting might undoubtedly surrender the franchises of a corporation and work its dissolution. But can a portion of them do this, in the absence of statutory authority? There is no statute in this State which authorizes a portion of the stockholders to maintain an action to dissolve a manufacturing corporation, and I know of no decision holding that they can. The statutes (2 R. S., 467), provide for the voluntary dissolution of corporations, but that must be upon the application to a proper court " of the directors, trustees or other officers having the management of the concerns" of the corporation, but not upon the application of a portion of the stockholders. It is provided in reference to banking and insurance corporations which shall have become insolvent or unable to pay their debts, or which shall have violated their charters, that they may, upon application to a court of equity, be restrained from further exercise of their corporate rights and franchises, and receivers may be appointed of their property; and such application may be made by the Attorney-General in behalf of the State or of any creditor or stockholder: (2 R. S., 465.) But this is not such a case. It is further provided that when a judgment shall be obtained against any corporation, and an execution issued thereon shall have been returned unsatisfied, a court of equity may, at the suit of the judgment creditor, sequestrate the property of such corporation and appoint a, receiver: (2 R. S., 463.) But this remedy is confined to the judgment creditor. There is abundance of authority for holding that there is no general power in a court of equity for sustaining such an action as this prosecuted by a portion of the stockholders: (*Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch., 84; *Galwey* v. *U. S. Sugar Refining Co.*, 13 Abb. Pr., 211; S. C., 36 Barb., 256; *Ramsey* v. *The Erie Railway Co.*, 7 Abb. Pr. [N. S.], 156, 181; *Howe* v. *Deuel*, 43 Barb., 505; *Latimer* v. *Eddy*, 46 id., 61; *Belmont* v. *The Erie Railway Co.*, 52 id., 637, 665; *Gilman* v. *The Greenpoint Sugar Co.*, 4 Lans., 483; *Wilmers-*

doerffer v. *The Lake Mahopac Imp. Co.*, 18 Hun, 387; *The People* v. *The Erie Railway Co.*, 36 How. Pr., 129.) It remains, therefore, only to enquire whether this action can be maintained under section 38 (2 R. S., 463), which is as follows : "Whenever any incorporated company shall have remained insolvent for one whole year; or for one year shall have neglected or refused to pay and discharge its notes or other evidences of debt; or for one year shall have suspended the ordinary and lawful business of such corporation; it shall be deemed to have surrendered the rights, privileges and franchises granted by any act of incorporation, or acquired under the laws of this State, and shall be adjudged to be dissolved;" and in 1 Revised Statutes, 604, section 4, it is provided that in the same cases the corporation "shall be deemed to be dissolved." This case is not brought within these sections. There is no allegation in the complaint, or finding by the referee, bringing the case within them. While the referee found that the company was insolvent at the time of the commencement of the action, he also found, upon sufficient evidence, that it had not been insolvent for one year prior thereto. He also found that it had not for one year neglected or refused to pay and discharge its obligations or suspend its ordinary and lawful business; and such finding is authorized by the evidence. It appears that the Tompkins judgment was recovered upon certain demand notes given by the company to certain of the stockholders for borrowed money; but it does not appear that payment of any of these notes had been demanded and the company thus put in default more than two months before the commencement of this action. A corporation cannot be said to have committed an act of bankruptcy or insolvency, or to have neglected or refused to pay and discharge its obligations, because its demand notes remain outstanding and unpaid, until payment has been demanded. The corporation continued to carry on its ordinary business until March 27, 1876 — about eight months before the commencement of this action — when it executed the lease above mentioned for a term commencing April first of that year and ending Feb-

ruary first of the next year, " unless sooner surrendered," as provided in the lease. The lessee by the terms of the lease was to carry on the business of manufacturing and selling cement, so that the brand of the company would be kept before the public. I do not understand that this company could not lawfully temporarily lease its property to some person who would carry on its business when it could not profitably do so. But whether the lease was lawful or not, it did not give the plaintiffs a standing in a court of equity to ask for a dissolution of the corporation.

There is no finding that the property of this company was not sufficient to pay all its debts. It was simply found that it was insolvent, and that may mean simply an inability to pay and discharge its obligations as they accrue in the ordinary course of its business : (*Hazelton* v. *Allen*, 3 Allen, 114; *Brouwer* v. *Harbeck*, 9 N. Y., 589; *Ferry* v. *Bank of Cent. New York*, 15 How. Pr., 445.) The plaintiffs gave evidence tending to show that the property of the company was not equal in value to the amount of its debts ; and the defendants gave evidence tending to show that there was property sufficient to pay all the debts and still leave the capital nearly or quite intact. What the precise truth as to the value of the property was, the referee did not determine and was not requested to determine, and hence we do not know. If the plaintiffs' claim be true, that there was not property sufficient to pay the debts, then they had no pecuniary interest in prosecuting this action, as they were not personally liable for the debts ; and upon that ground they could have been well turned out of court. If the defendants' claim as to the value of the property be true, then certainly there could be no reason for depriving the corporation of its life and winding up its affairs. If the plaintiffs were not entitled to have the corporation dissolved, then they could not have a receiver appointed. There was no proof of any fraud or mismanagement or wrong-doing on the part of the directors. The statute (1 R. S., 601) provides that upon the dissolution of any corporation, unless other persons shall be appointed by the

Legislature or by some court of competent authority, the directors shall be the trustees for winding up its affairs. If there were no other objection to the appointment of a receiver, it would at least be discretionary with the court, in such a case as this, whether it would appoint a receiver or leave the affairs of the company in the hands of its directors. Assuming that this company was totally insolvent, so that it could never resume its ordinary business, the plaintiffs did not, in any aspect of the case, have an absolute right to a receiver. The court in its discretion might conclude that it was for the interests of all parties to permit the property to be sold under the judgments, or to be managed and controlled by the directors.

In the foregoing discussion I have not referred to the act (chap. 151, of the Laws of 1870), "to regulate proceedings against corporations by injunction or otherwise," because corporations organized under the general manufacturing laws of the State are expressly excepted from the operation of that act. Neither have I referred to subdivision four of section 244 of the Code of Procedure, which provides that a receiver may be appointed " in the cases provided in this code, and by special statutes, when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights." Under that section it must always be discretionary with the court whether a receiver shall be appointed or not, and that discretion will not ordinarily be subject to review in this court. But that section does not touch this case, as there is no provision in the Code, or by any special statute, for a receiver in such a case as this.

I am, therefore, of opinion that there is no error in the record before us which calls for the reversal of this judgment, and it should be affirmed, with costs.

All concur.

Judgment affirmed.