Vann, J.—The
question presented bv this appeal is whether the court has power to dissolve a corporation organized as an Exchange, when it is solvent but doing no business owing to diverse *628 interests-of its members, upon the petition and consent of a large majority of its trustees and members, in opposition to the wishes of a small minority of both? Whether courts of equity have inherent power to dissolve corporations, as has been held in some jurisdictions but denied in others, it is unnecessary for us to consider, as the method of effecting corporate dissolution, when prescribed by statute as in this state, is exclusive and must be substantially followed. Verplanck v. Mercantile Ins. Co., 1 Edw. Ch., 84; Kohl v. Lilienthal, 81 Cal., 378; Spelling on Private Corporations, § 1008.
The earliest legislation upon the subject to which our attention has been called is an- act passed in 1817, which authorized the ■dissolution of incorporated insurance companies, provided the directors, or a majority thereof, presented a petition stating, among ■other things, that they deemed it necessary or beneficial to the interests of the stockholders, and provided also that no sufficient ■cause against dissolution should be shown to the chancellor, “ he having due regard to the interests of the stockholders and all persons interested.” Laws of 1817, chap. 146, §§ 1-4.
The Revised Statutes authorized the court of chancery to dissolve any corporation, with certain exceptions not now material, upon the petition of the directors, trustees or other officers having the 'management of its concerns, or a majority of them, provided it was either insolvent, or if for any reason a dissolution thereof would be beneficial to thé stockholders and not injurious to the public interest. 3 R. S., 6th ed., 752, §§ 73-80.
In 1876 the supreme court was authorized, “in its discretion,” to dissolve any corporation organized under the Manufacturing Act, provided the trustees consisted of an even number of persons, ■.and they were equally divided as to the management of its affairs, and provided that one-half of the stockholders favored the course ■of one division of the trustees, and the other half that of the other. Laws 1876, chap. 442, o p. 474. No ground of action was prescribed, and the power was to be exercised at the discretion of the court. The statute now regulating the subject consists of •§§ 2419-2432 of the Code of Civil Procedure, upon which this proceeding was founded. It applies to all corporations created by or under the laws of this state, except those of a" religious, educational, municipal or political character. § 2431. The proceeding may be commenced by the petition of a majority of the directors, trustees or other officers in control if the corporation is insolvent, or if for any reason the- petitioners deem it beneficial to the interests of the stockholders that it should be dissolved. Sec. 2419. If the trustees and stockholders are equally divided in respect to the. management, one or more of the trustees or directors may present the petition, but this clause does not apply to savings banks, trust, safe-deposit, railroad, banking or insurance- companies. Sec. 2420. Upon the presentation of a petition showing these jurisdictional facts,.as well as some others relating to the ■condition of the corporation, certain courts are authorized to issue and publish an order .to show cause, and upon the return thereof to hear or refer for hearing- the proofs and allegations.of the par *629 ties, and to make a final order dissolving the corporation, if it appears to the court that it is insolvent, or “ that for any reason a dissolution ” thereof “ will be beneficial to the interests of the stockholders, and not injurious to the public interests." Secs. 2421 to 2430.
The history of legislation upon the subject shows that prior to 1876 it was the policy of the legislature to authorize the courts to act upon the petition of a majority of the trustees, but the basis of action, except in the case of insolvency, was the interest of the stockholders. Division of opinion on the part of the trustees as to business policy does not appear to have been recognized by the legislature as an element requiring attention, until they provided by the act of 1876 that if the trustees and members were equally divided “ as to the management of the .affairs of the corporation,’’ the application to dissolve might be made by “ the trustees, or any or either of them.” This feature is reproduced by § 2420 of the Code, and it indicates that in the ■opinion of the legislature dissension as to .the management, especially when it might result in a deadlock so that business -could not be done efficiently, was sufficient to authorize action by the courts. Where, however, a majority of the trustees favor ■dissolution “ for any reason,” whether relating to the management ■or not, and it appears that “ for any reason ” a dissolution “ will be beneficial to the interests of the stockholders, and not injurious to the public interests, the court must make a final order dissolving the corporation.” Sec. 2429. As it is not claimed' that the public interests are here involved, the only question is whether the facts permitted the conclusion that a dissolution would benefit the stockholders.
In this case the members were the stockholders, as they owned the stock, but for convenience permitted the trustees to hold it «ex officio. The statute, moreover, as amended in 1884, provides for the case of corporations that have no stockholders, but simply members. Sec. 2431. As to what would be beneficial to the interests of the stockholders, it is clear that the opinion of a majority ■of the trustees, who are presumed to represent the wishes of a majority of the members, is of primary importance, because it is •essential to the jurisdiction of the court and must be set forth in the petition. Secs. 2419 and 2429. The legislature doubtless thought that the stockholders would be the best judges as to their own interests, and that if there was a difference of opinion the judgment of the majority would be more apt to be right than that of a minority. This case, however, is peculiar, because the interest of the stockholders was not uniform. The object of the Exchange was so broad as to include several diverse interests, so that while the dealers in one commodity would make, the other dealers would lose by its continuance in business. Under these circumstances, would a dissolution be beneficial to the interests of the stockholders, within the meaning of the statute? The benefit meant is a pecuniary benefit, either direct or indirect. The Exchange cannot be carried on so as to be of material use to any one without the annual expenditure of a large sum of money, *630 to be taken from the surplus or raised by compulsory assessment, as me by-laws provide. Is it to be expected that the majority,, having full control of affairs, will conduct the business efficiently at an actual loss and without any benefit to themselves ? The history of the corporation in question shows that while it maintains its organization, keeps open rooms and furnishes some facilities for the transaction of business, they are utterly inadequate to-an effective exchange, and that as now conducted it is of no appreciable benefit to any one. It is practically a failure, because, owing to diversity of views and interests, it does not accomplish, the object for which it was formed.
Is there any reason to expect an ■ improvement if this proceeding- is" dismissed ? None, in the nature of affairs, because the majority will not and cannot be compelled to tax themselves to-the extent necessary to maintain an adequate and useful exchange. If they can be forced. to maintain an exchange, they cannot be-forced to maintain an efficient exchange, as they can lawfully refuse to raise or expend enough money for that purpose. -If they see fit to reduce expenses by hiring cheap rooms, furnishing poor .facilities, dispensing with cable telegrams and reliable tea. standards, both of which cost a good deal, the law cannot interfere, because it has committed control of such matters to the trustees elected by the votes of a majority of the members. So-action in state and legislative matters, daily calls of merchandise,.the making and enforcement of rules to settle disputes, establish, warehouse charges and govern the issue of tea certificates, together with all of the benefits accruing to the tea merchants from an enterprising exchange, are necessarily under the control of the-majority, who cannot be compelled to be liberal, zealous or wise. All questions relating to the management, that call for the exercise of judgment or discretion, must be decided by the trustees or members, acting through a majority. Hence, an association that is useful to one class of its members, but injurious to another, will.be useless to both, as long as the latter is in control.
We think that when the interests of the stockholders of a corporation are so discordant as to prevent efficient management, and a large majority of both trustees and members wish to wind up its affairs, a dissolution thereof will be beneficial to the interests of the stockholders, because the object of its corporate existence cannot be attained. Re Niagara Ins. Co., 1 Paige, 258; Re Woven Tape Shirt Co., 8 Hun, 508; Webster v. Turner, 12 id., 264; Denike v. N. Y. & R. Lime & Cement Co., 80 N. Y., 599, 605; 2 Beach on Private Corporations, § 781; 1 Morawetz on Corporations, § 413; 2 Waterman on Corporations, § 420; 2 Spelling on Corporations, § 1012.
Hnder such'circumstances, it is better for all that a dissolutioni should be ordered, so that the minority may reincorporate upon some more practicable basis if they -so desire, and the majority-may no longer be forced to keep up a feeble and useless organization in which they take no interest, and from which they derive no benefit.
We are of the opinion that the determination of the learned *631 judges of the general term was right, and that their order should be affirmed, with costs.
All concur.