NEW-YORK PRACTICE REPORTS. 445

Ferry agt. The Bank of Central New-York.

# SUPREME COURT.

## WILLIAM H. FERRY agt. THE BANK OF CENTRAL NEW-YORK.

The plaintiff, a stockholder of the bank, brought his action against the defendant, (in October, 1857,) under the provisions of law regulating "proceedings against corporations in equity;" (2 *R. S.* 461;) and with the consent of the defendant, represented by counsel, an order was made by the supreme court at general term, enjoining the defendant from the exercise of its corporate functions and franchises, and appointing a receiver of its property and effects, upon the allegation of insolvency.

The receiver took possession of the property of the association, and made collections, &c. In January, 1858, the defendant upon statements, showing as was claimed, that it was solvent, asked the court that the order for an injunction and appointing a receiver be discharged, and that leave be granted to it, to resume the business of banking, under the articles of association. This relief was asked upon three grounds. 1st. That the injunction was irregular, having been granted without the giving of a bond, or undertaking against loss or damage, &c.

2d. That the provisions of the Revised Statutes for proceedings against corporations in equity, (2 *R. S.* 461,) were repealed by chapter 226 of the laws of 1849, (*Sess. Laws*, 1849, *p.* 340,) entitled "An act to enforce the responsibility of stockholders in certain banking corporations and associations, as prescribed by the constitution, and to provide for the prompt payment of demands against such corporations and associations," and,

3d. That the defendant was not, and is not, "insolvent," within the intent of the provision of law under which the action is commenced and prosecuted. (2 *R. S* 463, § 39, &c.)

*Held*, 1st. That whether a bond was necessary in such a case, was not properly before the court, or necessarily involved in this application; for the reason that the provision regulating the giving of a bond in any case, is for the benefit of the party enjoined, and of course might be waived by consent, as was done in this case. Besides, the dissolution of the injunction would not restore the defendant to its property or corporate rights, without a discharge of the receivership, and of consequence would afford no substantial relief to the parties.

*Held*, 2d. That this second question was one of too much importance to be hastily decided at special term, unless necessary to the determination of a pending matter, and as it was not essential to pass upon it upon this motion, it was not fully considered. But the judge was of the opinion that the design of the framers of the act of 1849, was to provide a cheap and expeditious mode of winding up the affairs of an insolvent corporation, or banking association, as a

substitute for the more dilatory and expensive process by action ; and to pro-vide substantially a remedy for stockholders and creditors, which should reach every case that might arise, and for which provision should be made for clos-ing up of the affairs, and dissolving a corporation or association for banking purposes, at the instance of stockholders and creditors.

*Held*, 3d. That there was not so much difficulty in defining *insolvency*, when ap-plied to moneyed corporations, as in determining what in a particular case, or class of cases, should be the evidence of insolvency, or present inability to pay debts and fulfil engagements. The definition and illustration of "insolvency," fully considered as applicable to various classes of business in trade, banking, &c.

If the inability of a bank to meet its undertakings, arises solely from an unexpected crisis, like that through which we have just passed, or are now passing, and exhibits resources abundantly sufficient to enable it to meet its engagements, and discharge its liabilities in the ordinary and usual method of conducting that business, it should not be pronounced insolvent, with a view to its dissolution. The question is, whether with its own resources, it can pay its debts, and be in a situation to conduct its business in the ordinary course, and as banks usually do ?

If a bank is so circumstanced as to depend upon the individual resources and ex-ertions of its directors and stockholders, and compelled to rely upon their pri-vate funds to meet its engagements, and only claims to be able to pay at a future day, it could not be said to be solvent.

In this case, the inference to be drawn from the complaint was, that the assets of the defendant were more than sufficient to pay its liabilities, and but for the peculiar character of the times, which affected all similar institutions, it would have gone on without interruption with its usual business. Motion granted.

*Oneida Special Term, January*, 1858.

In October last, upon the application of the plaintiff in this action, and by the consent of the defendant, represented by counsel, an order was made by this court at general term, en-joining the defendant from the exercise of its corporate func-tions and franchises, and appointing a receiver of its property and effects, upon the allegation of insolvency.

The action was brought by the plaintiff as a stockholder under the provisions of law regulating "proceedings against corporations in equity." (2 *R. S.* 461.) The receiver has taken possession of the property of the association, and made collections, &c., and now the defendant, upon statements show-ing as is claimed, that it is solvent, asks that the order for an injunction and appointing a receiver be discharged, and that

leave be granted to it to resume the business of banking, under its articles of association.

G. W. SMITH *and* T. JENKINS, *for the motion.*
M. H. THROOP *and* F. KERNAN, *contra.*

W. F. ALLEN, Justice. The defendant asks for relief upon this motion, upon three principal grounds. 1st. That the injunction was irregular, having been granted without the giving of a bond or undertaking, against loss or damage to ensue from the injunction, if it should be finally adjudged that the plaintiff was not entitled to that process. 2d. That the provisions of the Revised Statutes for proceeding against corporations in equity, (2 *R. S.* 461,) were repealed by chapter 226 of the laws of 1849, (*S. Laws,* 1849, *p.* 340,) "An act to enforce the responsibility of stockholders in certain banking corporations and associations, as prescribed by the constitution, and to provide for the prompt payment of demands against such corporations and associations." 3d. That the defendant was not and is not "insolvent," within the intent of the provision of law under which the action is commenced and prosecuted. (2 *R. S.* 463, § 39 *and seq.*)

Whether a bond is necessary in a case like the present, upon the granting of an injunction by the court, upon notice to the corporation or association proceeded against, is not properly before me, or necessarily involved in this application.

It is not before me, for the reason that the provision regulating a bond in any case, is for the benefit of the party enjoined, and of course may be waived by him, and in this case, the giving of the bond, if one was necessary, was waived by the defendant, by consenting that the injunction issue upon the papers read and without requiring a bond. By this consent, the defendant is estopped from now objecting to this defect, if the proceedings are really objectionable for that reason. It is not necessarily involved in the application, for the reason that the dissolution of the injunction will not restore the defendant to its property or corporate rights, without a discharge of the

receivership.   The receiver having the possession of the prop-
erty and rights in action of the defendant, a dissolution of the
injunction for the irregularity complained of, would afford no
substantial relief to the parties.

The second question made, is one of more importance and
of more difficulty.   I am of the opinion that the design of the
framers of the act of 1849, was to provide a cheap and expe-
ditious way of winding up the affairs of an insolvent corpora-
tion or banking association, as a substitute for the more dila-
tory and expensive process by action, and to provide substan-
tially a remedy for stockholders and creditors, which should
reach every case that might arise, and for which provision
should be made, for closing up of the affairs and dissolving a
corporation or association for banking purposes, at the instance
of stockholders and creditors.

Creditors for any amount, having judgment against the as-
sociation not collectible by execution, may proceed under the
provisions of the act, and creditors having demands exceeding
in amount $100, can proceed summarily if their debts remain
unpaid for ten days after demand; and preferences in the pay-
ment of debts by corporations insolvent or in contemplation of
insolvency, are expressly prohibited by the act to prevent the
insolvency of moneyed corporations.   (1 *R. S.* 591, § 31; *Lea-
vitt* agt. *Tyler,* 1 *Sand. C. Rep.* 207; *Brower* agt. *Harbeck,* 5
*Seld.* 588.)

In view of these statutory regulations assigned to secure
equality among the creditors of insolvent corporations, there
was no serious danger of loss to the  general creditor by the
delay of ten days after demand of payment of his debt.

In regard to stockholders, it was a question for the legislature,
whether the owners of stock to an amount less than one-tenth,
should be permitted to take steps for the dissolution of an as-
sociation, into which they had voluntarily entered with their
associates, so long as the corporation was prosecuting its ordi-
nary business and actually paying its liabilities as they accrued.
The bill was introduced by the present superintendent of the
banking department, and in his report of the bill to the senate

as chairman of the committee to which it was referred, he says :
" One feature of the bill (in addition to the provision for the
protection of the stockholders, and for whom there is little or
none now offered by our laws against the fraudulent conduct
of bank officers) is, that it prevents numerous and vexatious
suits against stockholders in cases of insolvency."   " This fea-
ture of the bill is one that cannot but commend itself to the
attention of the senate, as it entirely prevents numerous suits,
not only of creditors against stockholders, but of stockholders
against each other, while the creditor is protected, without the
necessity of bringing perhaps several suits to satisfy his de-
mand.   The committee fully believe that delay in the final
settlement of the affairs of insolvent corporations and associa-
tions, is fatal to the interests of both creditor and stockholder.
·The proverbial slowness with which our insolvent banks
have been wound up, they trust will be fully obviated in this
act."   " The leading features of the bill are : 1st.  To declare
the liability which equitably exists under the constitution.
2d.  The speedy remedy of both creditor and stockholder of
insolvent institutions, &c."  (*Senate Documents of* 1849, *No.* 42.)
The act read in connection with the report of the committee,
furnishes satisfactory evidence of the design of the originators
of the bill to provide a substitute for the remedy given by the
Revised Statutes to creditors and stockholders of insolvent cor--
porations and associations for banking purposes.

Another reason for the inference that the framer of the act
of 1849, designed and intended that act to provide a simple
and uniform remedy for closing up insolvent banks and bank-
ing associations applicable to both, and which should super-
cede all other remedies given by law, is, that at the time of
the passage of that act, it was not as well settled as it now is,
that banking associations are subject to all the provisions of
law relating to moneyed corporations.   The decisions in *Gil-
lett* agt. *Moody,* (3 *Comst.* 485 ;) *Talmadge* agt. *Pell,* (3 *Seld.* 328,)
and *Gillett* agt. *Phillips,* (3 *Ker.* 114,) settle the question that
they are subject to all such provisions, excepting when they
are inconsistent with the " act to authorize the business of

banking," and the acts amending the same. It is not necessary that a subsequent act should be repugnant in all its provisions to a former one, in order to repeal the latter by implication. If the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for it repeals the original act. (*Davis* agt. *Fainlaine*, 3 *How. U. S. R.* 636; *Dexter* agt. *Limerick P. R. Co.*, 16 *Barb.* 15. See *Commonwealth* agt. *Kimball*, 21 *Pick.* 375; *Leyster* agt. *Walker*, 9 *N. H. R.* 61; *Gage* agt. *Connor*, 4 *Pick.* 399.) The judges of this court, in the first and second districts, have agreed that the act of 1849 does supercede the provisions of the Revised Statutes in all cases in which the former act is applicable, and that a creditor of the bank who may have relief under that act, cannot proceed under the Revised Statutes. By parity of reason, a stockholder who could proceed under the act of 1849, would be precluded from availing himself of the remedy given by the Revised Statutes.

I have not seen the reasons for the opinions of the judges, nor the opinion in the case of *Livingston* agt. *The Bank of New-York*, (5 *Ab. P. R.* 338,) and therefore do not know to what extent they would deem their conclusions applicable, or whether the rule should exclude all creditors and all stockholders from proceeding for the dissolution of a banking association, except in accordance with the act of 1849. So far as they have put forth a rule of construction and action as between the two acts, I am inclined to acquiesce in its correctness. I am aware that the policy of the law does not favor the repeal of statutes by implication, and that ordinarily there must be a clear repugnance between the two statutes before the latter will be held to operate as a repeal of the former in the absence of a repeal in terms, and that courts hold against the repeal when both can stand together. These two statutes cannot be said to be so repugnant to each other that they cannot in many things stand together. But they act upon the same subject, and are designed to give relief in part to the same class of persons, and the only theory upon which they can stand together is, that the legislature intended to prescribe two distinct pro-

ceedings to accomplish the same purpose, and to give creditors and stockholders the option of proceeding under either. The question is one of too much importance to be hastily decided at special term, unless necessary to the determination of a pending matter, and as I do not deem it essential to pass upon it upon this motion, I will not further consider it.

The only remaining ground urged by the counsel for the defendant, was as to the solvency of the institution at the time the proceedings were instituted and at present. The language of the act under which the action was commenced, is: "Whenever any corporation having banking powers, or having the power to make loans on pledges or deposits, or authorized by law to make insurances, shall become insolvent or unable to pay its debts, &c., the court of chancery may by injunction restrain, &c." (2 R. S. 463, § 39.) There is not so much diffi culty in defining insolvency when applied to moneyed corporations, as in determining what in a particular case, or class of cases, shall be the evidence of insolvency. Insolvency in the abstract, has the same signification, whether applied to corporations or associations, and means a general inability to pay one's debts; an inability to fulfil one's obligations, according to his undertaking; a general inability to answer in the course of business, the liabilities existing and capable of being enforced. Not an absolute inability to pay one's debts at some future time, upon a settlement and winding up of all a trader's concerns, but as not being in a condition to pay one's debts in the ordinary course, as persons carrying on trade usually do. (Brower agt. Harbeck, 5 Seld. 589, and cases cited ; 2. Bell's Com. 162 ; Thompson agt. Thompson, 4 Cush. 134; Mitchell agt. Gazzen, 12 O. R. 335 ; Herrick agt. Borst, 4 Hill, 654.) The question as to actual or contemplated insolvency, has most frequently arisen under bankrupt and insolvent laws, and in testing the validity of transactions sought to be avoided under acts of the like character, and has been rather as to the evidence of insolvency, either actual or contemplated in each particular case, and under a particular statute; than as to what constituted insolvency generally. The latter question did not

arise at all in *Brower* agt. *Harbeck.* The insolvency of the company was conceded and palpable within any definition of the term, and in reference to future as well as present ability to pay. The question in every case is as to the evidence of insolvency or present inability to pay debts and fulfil engagements.

An inability to pay arising from unexpected and unforeseen contingencies, would not alone be evidence of insolvency within the statute under consideration, or any concerning bankruptcies and insolvencies. A merchant or trader, who should be driven to protest, by the failure to receive an expected remittance, or the bankruptcy of a debtor, upon whom he had relied, would not for that reason be deemed insolvent, and yet he would have failed to fulfil his obligations according to his undertaking.

If from taking a reasonable view of his situation and the surrounding circumstances at the time, it could fairly be seen that he was able not only ultimately to pay his debts, but could at once recover from the temporary embarrassment and derangement of his business, by a proper application of his means, and could carry on his business and meet his engagements in the ordinary course, and as persons in the same business usually do, he would properly be called solvent. So too, if the present inability to pay was the result of a crisis, a peculiar stringency in the monetary affairs of the country, instead of the failure of one individual, and one source of supply, and by which he was cut off temporarily from the resources upon which he was accustomed to rely, and upon which traders in like circumstances are accustomed to rely, the effect would be the same on the general question of insolvency.

It is no evidence of insolvency that a trader habitually relies upon anticipating the payment of his bills receivable, by procuring them to be discounted to meet his engagements, or procuring loans upon his own credit, relying upon collections to repay the loans.

This usual reliance may fail him, and he be left unable to meet his engagements, and yet be far from insolvent within

any definition of the term. The same principle applies to banking corporations and associations. The liabilities of these institutions payable presently, always exceed very largely the present absolute ability to pay. Every dollar of their circulation and their entire deposits, are subject to call, and may be demanded in a single day, and yet it is well known that no bank keeps on hand either in coin or bills of solvent banks an amount equal to one-tenth of the obligations which they are legally bound to answer on demand. The law recognizes this fact in the provisions which it makes for giving fifteen days for the redemption of bills transmitted under protest to the banking department, and ten days for the payment of demands presented before proceedings can be had for the dissolution of corporations and associations, on account of such non-payment. (*Laws of* 1851, *p.* 377, § 4; *Laws of* 1843, *p.* 342, § 7.)

The institutions themselves, rely upon their ability to meet their engagements not at one time and upon demand, but according to the course of business. This dependence, aside from their ultimate and final ability to pay to the extent of their obligations, is upon the general and known course of business, by which they are enabled to calculate upon the average amount of deposits, and the length of time which they are permitted to remain, and the rate at which their circulation will be returned for redemption. 2dly. Upon their ability in any emergency that may arise, to realize upon their assets by negotiating their bills receivable, or in some other legitimate and customary way, making their resources available for present purposes. Both these resources may fail in times of general distrust and monetary pressure, and leave a banking institution with abundant resources, unable upon an unexpected emergency and unusual call, to meet its engagements.

If the inability of a bank to meet its undertakings, arises solely from an unexpected crisis, like that through which we have just passed, or are now passing, and exhibits resources abundantly sufficient to enable it to meet its engagements and discharge its liabilities in the ordinary and usual method of

conducting that business, it should not be pronounced insolvent with a view to its dissolution.

· The question is, whether with its. own resources it can pay its debts, and be in a situation to conduct its business in the ordinary course and as banks usually do.  If a bank is so circumstanced as to depend upon the individual resources and exertions of its directors and stockholders, and compelled to rely upon their private funds to meet its engagements, and only claims to be able to pay at a future day, it could not be said to be solvent.

In this case, neither the complaint nor the affidavits and papers used in opposition to this motion, suggest or show that up to the time of the " pressure and distrust in the money market," which is put forth in the complaint as the reason why the defendant could not make its bills receivable available to pay its debts, the bank had experienced any difficulty in meeting its current engagements, or had been compelled to resort to any extraordinary or unusual means to raise funds for their payment.

The complaint alleges that the payment of ten thousand dollars of its bills had been demanded, and that the bank had not the means of payment, and could not then raise them, and this fact is denied by the defendant.

The inference to be drawn from the complaint is, that the assets of the defendant are more than sufficient to pay its liabilities, and but for the peculiar character of the times, which affected all similar institutions, it would have gone on without interruption with its usual business.  The statement of the affairs of the bank upon which the motion is made, shows a large surplus after the payment of all debts, and the facts are not contradicted by the plaintiff.

That statement is not to any great extent more favorable to the defendant than the expose of its creditors made by the complaint, the defendant shows :

Liabilities,                                            $147,760

| | |
|---|---:|
| Resources, bills receivable, (good,) | 100,000 |
| Bonds and mortgages, good, | 8,000 |
| Over drafts, | 600 |
| Arkansas stock, | 4,000 |
| New-York state stocks, | 32,000 |
| Michigan and Illinois stocks, | 6,600 |
| Bonds and mortgages deposited, | 31,945 |
| Real estate, | 25,000 |
| Cash, | 12,000 |
| | 220,045 |
| Surplus, | $72,285 |

The complaint shows a surplus of $22,850

The actual liability of the defendant other than to billhold-ers is but $80,060, thirteen thousand dollars of the $93,060 being deposited in part payment of bills payable to the bank. The discrepancies in the two statements is accounted for by the fact, that the cashier in his affidavit undertakes to state the liabilities with accuracy and from personal knowledge, while the plaintiff makes his statement from information and belief. It is probable that some, and perhaps considerable allowance should be made from the apparent balance, in order to arrive at the actual surplus and the real value of the stock to the holder. It is liable to be varied by many contingencies, and the real estate is, I think, estimated too highly; but it is con-ceded that there is a surplus, and it is very palpable that the assets can, properly managed, be made to yield a larger amount in the hands of the proper owner, than can be realized by a re-ceiver compelled to close up the affairs without permission to exercise that discretion which an individual can exercise in his own concerns.

The judges in the first and second districts have agreed that a bank is clearly solvent which is clearly able to pay its debts, although it may have suspended specie payment for a time, and they say that this principle was held by this court and

the court of appeals, in the case of *The North American Trust & Banking Company.*

The courts in the first district have, as I understand, acted upon the principle thus put forth, and have refused to appoint receivers, and have discharged receivers already appointed, when it has appeared that the bank was clearly solvent, that is, was of abundant ability to pay its debts notwithstanding it has succumbed to the pressure of the times. I think I ought to follow the precedent unless there are good objections existing in the case. 1st. If the bank can resume its business and assume the control and settlement of its own affairs, it will be in a situation to realize a greater amount of its assets than can well be done by a third person.

2d. The creditors will be rather benefited than harmed by the dissolution of the injunction and the discharge of the receiver. Their debts, which must now await the tardy settlement by process of law, may be demanded and collected at once.

3d. The billholder loses no security, and can at once take measures to compel their immediate redemption.

4th. The public cannot suffer except by consent; the bills will continue to be secure, so long as the securities remain in the banking department, and these securities must remain until the bills are withdrawn from circulation. No person can be compelled to deposit with, or in any other manner give credit to the bank, and whatever credit it has, it must earn or acquire by the character which the managers may give the institution. It will resume business with the discredit of these proceedings, which is to be overcome before a very general credit can be established.

Some of the stockholders object to the granting of this application, upon the ground that they prefer the closing up of the affairs of the bank to further risking their money and their credit in the business in which they voluntarily embarked with their associates. I think that none but the plaintiff is entitled to be heard upon this application, as he is the only party to the suit. But if all who are represented, or claim to

be represented, are entitled to a hearing, they represent but a small part of the stock, and whether they represent much or little, their objections can only avail when resting upon some statute or upon some legal right. If the bank is not insolvent or in danger of insolvency, they cannot insist upon the dissolution of the association.

They have voluntarily engaged in the business of banking, and can only withdraw in the mode prescribed by law and the articles of association, and while the bank has an existence, it must be managed by directors chosen according to law. Much was said of the character of the managers into whose hands the bank has come. If facts had been stated in the affidavits showing their incompetency and unfitness to manage an institution of this kind, it might legitimately have influenced me perhaps in my conclusion as to the probable ability of the bank to recover with its present resources and successfully prosecute its business. But no facts are stated, and general denunciations and sweeping charges cannot be permitted to control judicial action. If my own opinion of the gentlemen who are obnoxious to those opposing this motion, was in accord with the objections, if not based upon facts brought judicially before me, it could not properly influence me in the decision of the motion.

Perhaps all are sufficiently answered by the fact that they whose right it was, have certified to their fitness by selecting them as the guardians and trustees of their property. Aside from the merits of the application, two objections are taken by the plaintiff. 1st. That the defendant is in contempt for a violation of the injunction, and therefore cannot be heard upon a motion addressed to the favor of the court.

The breach alleged, is, the election of directors and the organization of the new board pending the proceedings. But the injunction is upon the defendant and its officers, restraining them from exercising any of its corporate rights, privileges or franchises. The stockholders were not enjoined from doing any act, and the individual act of the stockholders in selecting directors or appointing agents to care for their property, was

in no sense a corporate act by the association, or its officers or agents. There was no breach of the injunction.

The second objection was, that the court had not the power to discharge a receivership which ·it had once created. But for the character of the counsel and the earnestness and· apparent sincerity with which this objection was put forth, I should not have considered it a very serious question.

The counsel view the jurisdiction of ·the court in regard to insolvent corporations as a special jurisdiction, and the proceeding a statutory proceeding, and in character like the jurisdiction vested in the supreme court in the New-York street cases. But I regard it rather as an extension of the general jurisdiction of the court, to be exercised subject to the provisions of the statute, in the same manner and subject to the same control as other matters within the jurisdiction proper· of the court. There is nothing in the nature of the power vested in the court, why it should be different, and any other conclusion would lead to absurdities.

If the position of the counsel is correct, then every step taken in a proceeding ·is final. An injunction once granted, cannot be dissolved ; an irregularity or defect in the proceeding cannot be amended or disregarded, and if in the result of the action it appears that the corporation is clearly solvent, the receiver must, nevertheless, wind up the affairs and give the stockholders the surplus. I do not see how, if the objection is well taken, the court could interfere upon motion, even for fraud. This, however, the counsel conceded could· be done, and yet if it was really an act done under a special power, I do not see why the aggrieved party would not be driven to an action, as he would be to get rid of any act *in pais* on a fraudulent deed.

The practice in New-York has been to control and set aside orders of this kind in these proceedings as in ordinary actions. In *Verplank* agt. *The Mercantile Insurance Co.*, (2 *Paige*, 438,) the chancellor evidently contemplates an alteration or revocation of the power of a receiver as within· the province of the court. In the case of *The Bank of Buffalo*, (6 *Paige*, 497,) the

NEW-YORK PRACTICE REPORTS. 459

Ferry agt. The Bank of Central New-York.

court did not suppose that it was acting under a special statutory power to be strictly observed, and that when once executed its power over the proceedings was gone.

It did dissolve the injunction, and the granting of the injunction is as much the exercise of the special power as the appointing of the receiver. The proceedings in these cases were by petition, and the order for a receiver when made, was necessarily final, as the proceedings were summary. The order was in the nature of a decree, and to be enrolled as a final decree. The chancellor, in his opinion, recognizes the distinction between an interlocutory order and a final order or decree in proceedings against corporations. He says: "A final order or decree for the appointment of a receiver, is a virtual dissolution of the corporation." So in the matter of *The City Bank of Buffalo*, (10 *Paige*, 378,) a final order had been made in the action, and upon that ground the chancellor held that there was no necessity to review the action. The cause had been brought to a hearing, and a final decree made therein, adjudging that the bank had forfeited its rights, &c. In this case, no final judgment or order has been given. 1st. The general term could not give judgment in the case. That could only be done at special term. (*Code*, § 278.) 2d. The defendant had twenty days to answer the complaint, from the time of service, and had not waived that right by consenting that judgment might be taken. The interlocutory order did not affect the right to answer, or the necessity of a final judgment in the action.

The plaintiff claims to be a creditor of the defendant as one of the firm of Richwell & Ferry. The action is not prosecuted by him as a creditor, and he is not, therefore, entitled to any relief as such, but inasmuch as he fears that he may be delayed in the collection of his debt if the bank is restored to the control of the present directors, provision will be made in the order for a speedy trial of his claim.

The motion will be granted, and the defendant have leave to answer the complaint within twenty days, on payment of $10 costs of this motion ; the receiver to pass his accounts be-

fore O. S. Williams, Esq., referee, to retain such compensation for his services and for expenses incurred, as shall be allowed by said referee ; this order not to abate any suit brought by the receiver, but the receivership continued as to the demands in suit, until the bank can be substituted in the place of the receiver as plaintiff. In case the plaintiff elects to discontinue this action, then the defendant to pay the costs and reasonable counsel fee of the plaintiff, to be certified by the referee aforesaid, and the defendant is to stipulate to answer any complaint which shall be made upon it at the suit of Rockwell & Ferry, for the recovery of their claim within twenty days after the service thereof, and to refer the action to the said referee for trial and decision.