NOEL L. ANTHONY vs. ANTHONY & COWELL COMPANY.

JANUARY 26, 1917.

PRESENT: Johnson, O. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Receivers. Dissolution of Corporation. Distribution of Assets among Stockholders.*

On petition alleging that a domestic corporation was "unable to pay its debts as they become due and payable, in the ordinary course of business, and is insolvent," permanent receivers were appointed and administered the affairs of the corporation, paying the indebtedness of the corporation to its creditors in full, and making one distribution of $7 a share to stockholders under order of the court, and thereafter having further funds on hand and outstanding accounts receivable, asked for an order authorizing them to pay from time to time ratably to the stockholders such sums as might be available, and for leave to sell the unpaid accounts receivable.

The corporation by majority vote having authorized its treasurer to apply for the discharge of the receivers and to have the remaining assets returned to the corporation, opposed the action of the receivers.

Gen. Laws, 1909, cap. 213, § 29, provides that "The receiver shall pay all debts due from such corporation, if the funds in his hands are sufficient therefor, and if not . . . ratably . . . If there is a balance remaining . . . the receiver shall distribute and pay it to and among the stockholders."

*Held*, that the language of Section 29 was qualified by the amendment of Section 28 of said chapter by cap. 425, Pub. Laws, passed May 6, 1909. And while it pointed out how the assets of a corporation must be dis-

tributed by a receiver, when their distribution was ordered by the court, the present statute, considered as a whole, was not mandatory in requiring the winding up of the affairs of a corporation in all cases in which a receiver was appointed, but in some cases this would be discretionary with the court.

*Held,* further, that the cause would be sent back to the Superior Court, if the question for determination was whether, on the facts, the corporation ought to be wound up and its assets distributed or whether the prospect of its reorganization was such as to justify the return of the remaining assets to it, but as it appeared that the only question was how the corporation was to be wound up, no sufficient reason appeared to disturb the decree.

(2) *Continuance.*

Ordinarily the continuing or refusing to continue the hearing of a motion properly pending before a court is within the discretion of the court, and its action will not be reversed unless there be a clear abuse of such discretion.

JOHNSON, C. J., and SWEETLAND, J., dissenting.

EQUITY. Petition for appointment of receivers. Heard on appeal of certain parties from decree of Superior Court, and appeal denied and dismissed.

BAKER, J.    This is an appeal by the Anthony & Cowell Company, a domestic corporation, Oscar G. Thomas and John A. Cowell, stockholders in said corporation, from an interlocutory decree entered June 20, 1916, by the Superior Court directing the receivers of said corporation previously appointed by said Superior Court to distribute from the assets of the corporation in their hands four dollars ($4) a share to the stockholders and authorizing them to sell at public auction all the remaining receivers' accounts receivable, a claim against the receiver of the Atlantic National Bank, and all suspended accounts of said corporation not barred by the statute of limitations.

The original petition in the case, filed June 14, 1915, under the provisions of Chapter 213 of the General Laws, asks for the appointment of receivers of the defendant

corporation on the ground that it " is unable to pay its debts as they become due and payable in the ordinary course of business and is insolvent." On June 29, 1915, Henry Fletcher and Arthur L. Lougee were appointed permanent receivers by a decree authorizing such receivers " to take possession and charge of the estate and effects of such corporation and to preserve the same; to collect, get in and receive the debts and other assets and effects belonging to said corporation; to prosecute, adjust and compromise all claims belonging to the corporation, and to defend, adjust and compromise all claims against said corporation; to conduct the business of said corporation for the purpose of completing such contracts and orders as may be assumed by the receivers or made or taken by them; and generally to sell the property, effects, stock in trade and other assets of the corporation; and for the purposes aforesaid and the general purposes of the receivership to employ such labor and assistance, clerical or otherwise, to incur such expense and purchase such supplies, as in their opinion may be necessary or advisable."

The receivers entered upon their duties and after conducting the business for a time, in December, 1915, by authority of the court, sold all of the merchandise and certain intangible property of the corporation, together constituting the most of its assets, and the good will of the business. On March 7, 1916, the final account of the receivers was allowed. This showed the payment in full of all the creditors of the corporation whose claims had been allowed. It also appeared that after payment of the receivers' fees in full, counsel fees to date, and other expenses and costs as allowed by the court, there remained in the possession of the receivers cash in the sum of over $14,000 and accounts receivable of the face value of approximately $12,500. Thereafter, on March 15, 1916, on the petition of the receivers they were

ordered to distribute among the stockholders of the Anthony & Cowell Company seven dollars ($7) per share, " it appearing that the total number of shares then outstanding was eighteen hundred sixty-three shares of the par value of one hundred dollars each." No appeal was taken from any decree entered before the one now appealed from. On June 13, 1916, the receivers representing that they had in hand and in bank cash to the amount approximately of $7,630 and outstanding accounts receivable of the face value of about $6,000, asked for an order authorizing them to pay from time to time ratably to the stockholders such sums as might be available therefor, and for leave to sell at private sale the unpaid accounts receivable. This petition was heard June 15. The corporation appeared by counsel in opposition to such action and asked for a continuance partly on the ground that inasmuch as at a stockholders' meeting on April 24, 1916, a vote was passed by a majority of the outstanding stock authorizing the treasurer to apply to the court to discharge the receivers and to have the remaining assets returned to the corporation, it might have opportunity to make formal application to the court in accordance with such vote. Certain excuses at the time were made for not making. the application previously. The request of the corporation for a continuance was denied and on June 20 the decree first hereinbefore mentioned was entered.

The statement of appeal contains eight alleged grounds of error, which, as presented to us, are reduced to three.

In addition to the receivers eight stockholders of the Anthony & Cowell Company, the majority. in number, but a minority in interest, appear by counsel to uphold the decree appealed from.

The claim which the appellants chiefly press is that inasmuch as the corporation is actually solvent as shown

by the receivers' accounts, as allowed, the assets of the corporation remaining in the receivers' hands ought to be returned to it, and not be distributed to its stockholders, particularly in view of the fact that the corporation has not been dissolved. The receivers and the minority stockholders on the other hand urge that it was the duty of the court, after having adjudged the corporation insolvent and partially wound up its affairs, to complete the process as provided by Sections 28 and 29 of Chapter 213 of the General Laws.

No question as to the constitutionality of a statute is sought to be raised, notwithstanding the sixth reason of appeal alleges that the "Superior Court had no power to order a distribution among the stockholders of the assets in the hands of the receivers," but the claim of the appellants is simply that the statutes applicable in the case before us, properly interpreted, do not confer such power.

This question of interpretation, if any such there be, relates particularly to Section 29 which reads as follows: "Sec. 29. The receiver shall pay all debts due from such corporation, if the funds in his hands are sufficient therefor; and if not, he shall distribute the same ratably among the creditors who prove their debts in the manner directed by any order or decree of the court for that purpose. If there is a balance remaining after the payment of the debts, the receiver shall distribute and pay it to and among the stockholders of the corporation or their legal representatives." In fact the question practically narrows itself to ascertaining to what extent the last sentence of this section is applicable to the situation appearing in the present case. The language of the section is mandatory in character and in itself gives rise to no question of interpretation. If such question exists, it arises out of the relation of this section to Sections 27, 28 and 30. To properly consider and determine this

question it will be of advantage to examine the act as originally passed and its subsequent amendments.

Prior to 1888 there appears to have been no statute relative to the appointment of receivers of corporations in general, although there were statutory provisions for the appointment of receivers of State banks, institutions for savings and insurance companies. On March 23, 1888, the following act was passed: "An Act in Amendment of Chapter 152 of the Public Statutes, ' Provisions respecting Corporations in General.'

" It is enacted by the General Assembly as follows:

" Section 1. Whenever any corporation is insolvent, or, whenever, by reason of the fraud, negligence, misconduct, or continued absence from the state of the executive officers of any corporation whose stockholders have neglected, refused, or omitted for an unreasonable time to hold meetings or attend to its concerns, the estate and effects of such corporation are being misapplied or are in danger of being wasted or lost, or whenever any corporation has done or omitted to do any act, which act or omission is ground for the forfeiture of its charter at law, the supreme court may, upon the petition of any stockholder or creditor of such corporation and upon such reasonable notice as the court may prescribe, decree a dissolution of such corporation and appoint a receiver of its estate and effects, or may appoint such receiver without decreeing a dissolution.

" Sec. 2. Such receiver shall take charge of the estate and effects of such corporation and collect the debts and property due and belonging to it, sell and convert such property into cash, with power to prosecute and defend suits in its name or otherwise, to appoint agents under him, and to do all other acts which might be done by such corporation, that may be necessary for the final settlement of its unfinished business, and the winding up of the corporation. The powers of such receiver may be con-

tinued as long as the court deems necessary for said purpose.

"Sec. 3. The receiver shall pay all debts due from such corporation, if the funds in his hands are sufficient therefor, and if not, he shall distribute the same ratably among the creditors who prove their debts in the manner directed by any order or decree of the court for that purpose. If there is a balance remaining after the payment of the debts, the receiver shall distribute and pay it to and among the stockholders of the corporations or their legal representatives.

"Sec. 4. The court shall have jurisdiction in equity of the application and of all questions arising in the proceedings thereon, and may make such orders and injunctions and decrees therein as justice and equity require.

"Sec. 5. This act shall take effect from and after its passage."

The first four sections of this act appear in the General Laws of 1896 as Sections 27, 28, 29 and 30 of Chapter 177, the only addition being the insertion in Section 27 of the words, " the appellate division of " before the words " the supreme court."

Sections 2, 3 and 4 of the Act of 1888 appear to have been partly adapted and partly copied from Sections 42, 43 and 44, of Chapter 105 of the Public Statutes of Massachusetts of 1882, relating to the appointment of receivers for corporations whose charters had expired or had been annulled or which had been dissolved by order of court or whose corporate existence had terminated in some other manner.

By Chapter 655 of the Public Laws, passed May, 1899, Section 27 of said Chapter 177 was amended by adding as an additional ground for requesting the dissolution of a corporation or the appointment of a receiver of its estate the following words, " or whenever a majority in interest of the members of a corporation having a capi-

tal stock, or a majority of the members of a corporation having no capital stock, shall have voted to dissolve said corporation and to wind up its affairs," and also by inserting the clause "or may decree such dissolution without appointing a receiver."

By Section 1220 of the Court and Practice Act, passed 1905, said Section 27 was amended by striking out the words "appellate division of the Supreme" and inserting the word "Superior."

Sections 27, 28, 29 and 30 of Chapter 177 of the General Laws of 1896, as thus amended, appear as Sections 27, 28, 29 and 30 of Chapter 213 of the General Laws of 1909.

Under the original statute and its amendments there seemed up to 1909 to be no good or satisfactory reason for interpreting these sections as in any way implying that the powers and duties of a receiver appointed under them were at all different when the decree dissolved the corporation from his powers and duties when such dissolution was not decreed. In either event it is provided that "such receiver shall take charge of the estate . . . collect the debts . . . due . . . to it, sell and convert such property into cash, with power . . . to do all other acts, which might be done by such corporation, that may be necessary for the final settlement of its unfinished business and the winding up of the corporation." As already appears, Section 29 provides that he shall also pay all debts of the corporation in full, if the funds are sufficient, otherwise ratably, and if there be a balance remaining, he "shall distribute and pay the same to and among the stockholders of the corporation." The chief purpose of the appointment of a receiver under this statute is plainly for the purpose of *winding up the business of the corporation.* To accomplish this the performance of his duties as above enumerated is by the statute made imperative, not discretionary. It is incumbent on the court to make the decrees necessary to secure the performance of these duties.

Up to the revision of 1909, as has already been shown, all the amendments to this statute were to Section 27, and related mainly to the specifying of additional grounds for appointing a receiver. The sections describing the powers and duties of receivers remained unchanged. It seems very clear, however, that a statute which requires a winding up of the business and a distribution of all the assets whenever a receiver of a corporation is appointed is neither well adapted nor adequate to meet the needs of modern commercial and industrial conditions. There are not infrequent cases in which a receivership serves its complete purpose in preserving valuable properties for the benefit of all interested therein during emergencies and in periods of general business disturbance, so that when the emergency or period of business trouble is passed the interests of all will be properly served by restoring the possession, control, and management of such properties to their owners. For such a procedure the existing statutes made no express provision. Apparently to remedy this and some other defects this statute was further amended in 1909.

By Chapter 424 of the Public Laws, passed May 6, 1909, said Section 27 was amended by inserting after the words " whenever any corporation," in the first line, the words " incorporated under the laws of this State, except a bank, savings bank, or trust company incorporated under the laws of this State," and by adding at the end of the section a sentence making the act apply to " any corporation incorporated under the laws of any other State and having any estate or effects in this State " as to which it is said that " the Superior Court may . . . appoint a receiver of its estate and effects in this State, and distribute the same in accordance with the equitable rights of the parties." It may be here noted that, while Chapter 233 of the General Laws provides a different procedure for the appointment of receivers of banking

institutions, such receivers, when appointed, "have all the powers" and are "subject to all the duties conferred or imposed upon receivers by the provisions of sections twenty-eight and twenty-nine of Chapter two hundred and thirteen." See Section 7, Chapter 233, General Laws.

By Chapter 425 of the Public Laws, also passed May 6, 1909, Section 28 was amended so as to read as follows: "Sec. 28. Such receiver shall take charge of any such corporation's estate and effects of which he has been appointed receiver, and he shall collect the debts and property belonging to it. He shall have power to prosecute and defend suits in its name or otherwise, to intervene in any action, suit, or proceeding relating to such estate or effects, and to appoint agents under him. He shall have power, under the direction of the court, to preserve the assets of such corporation, to carry on its business, to sell and convert such assets and property into cash, to redeem any mortgages, conditional contracts, pledges, or liens of or upon any such property, refer any controversy or dispute concerning any such property to arbitration, compromise any controversy or dispute concerning any such property, and generally to do all other acts which might be done by such corporation, or that may be necessary for the administration of his trust, according to the course of equity."

Section 27 was further amended by Chapter 780 of the Public Laws, but not in such manner as to affect the question now considered.

Referring to the amendment to Section 27 contained in said Chapter 424, providing that the Superior Court of this State may appoint a receiver of the estate and effects in this State of a foreign corporation, with power to "distribute the same in accordance with the equitable rights of the parties," inasmuch as the equitable rights of creditors to the assets of the corporation are superior

to those of stockholders, it seems plain that if, after the
payment of all debts presented to the receiver and duly
allowed and established, there remains a balance of such
assets in his hands, and it appears that such balance is
needed by the receiver at the domicile of the corporation
for the payment of debts duly proven there, equity would
require the payment of such balance to the domiciliary
receiver rather than to distribute such balances to the
stockholders as directed by Section 29.

The alterations in Section 28 are obviously very signifi-
cant and important as affecting the powers and duties of
receivers of domestic corporations and the authority of
the court to prescribe and regulate them.

Although Section 29 remains unaltered, we are of the
opinion that the amendment of Section 28 by Chapter 425
is of such a nature that in construing the four sections
as amended taken together, Section 29 is unquestionably
qualified in respect to its application to different receiver-
ships. For it is no longer a statutory requirement that
a receiver "*shall* sell and convert into cash" all "the
estate and effects of the corporation for the final settle-
ment of its unfinished business and the *winding up of the
corporation.*" While as before he is required to take
charge of such estate and effects and to collect the debts
and property of the corporation, with power to prosecute
and defend suits in its name or otherwise, and to appoint
agents under him, he is not required to sell and convert
its assets and property into cash. There is no reference
to a settlement of the corporation's unfinished business
or the winding up of its affairs. On the other hand, he
has power, "under the direction of the court," to pre-
serve the assets, *to carry on the business,* to redeem
mortgages and pledges, to compromise disputes concern-
ing the property, and to do all other acts necessary for
the administration of his trust "according to the course
of equity." We think this new Section 28 is intended to

free the court from the necessity of dealing with a receivership of a corporation as simply created for the winding up its business affairs and to leave with the court itself the authority to supervise and direct the receiver in "the administration of his trust according to the course of equity."

But if Section 29, which provides for the last steps in a winding up operation, is still to be regarded as mandatory in all cases when a receiver is appointed, then the hands of the court would not be freed and the amendment in its most important particular would be without effect. We do not think such a construction is either necessary or proper. While effect must be given to every section so far as is practicable, Section 28, as amended by said Chapter 425, is the latest expression of the legislature's intent, and therefore Section 29 should be held not to apply to a receiver of a corporation when the court, in the proper exercise of its discretion, does not deem it equitable to order a general distribution of the corporate assets. We think, however, that the section applies in full force whenever the court decrees a dissolution of a domestic corporation and appoints a receiver, or when it appoints a receiver only and at the same time, or afterwards, in the proper exercise of its equitable powers, orders the winding up of the corporation and the distribution of its assets. To state it otherwise, while the section points out how the assets of a corporation must be distributed by a receiver, when their distribution is ordered by the court, the present statute, considered as a whole, is not mandatory in requiring the winding up of the affairs of a corporation in all cases in which a receiver is appointed. In some cases this will be discretionary with the court. We regard this as the reasonable and proper interpretation of the statute as now amended.

While a court may properly appoint a receiver of a

corporation on the ground of insolvency, in that it is
unable to pay its debts as they become due and payable
in the ordinary course of business (see Gluck & Becker
on Receivers of Corporations, § 14), yet unquestionably
it sometimes happens that such inability is due to some
unexpected condition, as, for example, a financial panic,
or to some widespread business depression or stringency
of the money markets, although the corporation may pos-
sess resources abundantly sufficient to enable it to meet
its engagements and discharge its liabilities in the ordi-
nary and usual method of conducting its affairs, and
therefore not of necessity to be held insolvent with a
view to a winding up of its business or to its dissolution.
We think in such a case the court, under the present
Section 28, upon becoming satisfied that such corporation
is in a solvent condition and able to resume business, and
that the best interests of creditors and stockholders would
thereby be secured, would have the power to discharge
the receiver and return the property then in his hands
to the corporation.   See High on Receivers, 344 and 357;
*Ferry* v. *The Bank of Central New York,* 15 How. Pr.
Rep. 445, 453.   In such case Section 29 would either not
apply at all, or only to the payment of debts due credit-
ors, if the court proceeded with the administration of its
affairs to that extent.

In this connection the opinion of the court in the case
of *Thompson* v. *Greeley,* 107 Mo. 577, 587, as to its gen-
eral equitable and statutory jurisdiction relative to re-
ceivers of corporations, is quoted as follows: "It may
be here remarked, also, that the temporary control of an
insolvent corporation by a court and a receiver does not
operate as a dissolution and forfeiture of its franchises.
After the debts have been paid, and the necessary capital
restored, this corporation could resume business under
its original charter.

"It is insisted that a statute enlarging the jurisdiction

of courts of equity, to the extent of displacing the managers of corporations and substituting officers of the court to take charge of its affairs, should be strictly followed. We recognize the correctness of this proposition so far, at least, as it applies to the act of taking jurisdiction to appoint a receiver. After the appointment is made, the authority and power will depend much upon the terms of the statute. If it undertakes to prescribe every step to be taken, and directions and rules for the management of the property, these steps should be taken, and these rules and directions followed. . . . The proceedings then become statutory, rather than purely equitable.

" If no details are prescribed by statute, or if the prescribed directions are clearly inadequate to accomplish the evident purposes of the statute, then the recognized rules of proceedings in equity will have to be invoked."

The statute under which the foregoing case arose provides for the appointment of a receiver and sets forth the powers and duties briefly and in few particulars.

As already appears in the present case prior to the entry of the decree of June 20 now appealed from the receiver, under the direction of the Superior Court, had paid the creditors of the corporation in full and had also distributed the greater portion of the balance of the assets remaining in his hands " to and among the stockholders of the corporation."

In view of what has already been said, this might ordinarily be regarded as a finding by the court that the present case is one in which the affairs of the corporation ought to be entirely wound up and the remaining assets distributed by the receivers to and among the stockholders instead of returning them to the corporation itself. It is apparent, however, that Chapters 424 and 425 were not called to the attention of the Superior Court and that they were not considered by it. Our attention

was not directed to them by counsel in the case. It may, we think, fairly be inferred from the record that the court felt obliged, under Chapter 213 of the General Laws, to order the receivers to distribute the remaining assets of the corporation among its stockholders after its liquidation. In other words, not regarding itself as having the power under the statute so to do, it did not consider the question of whether the situation pointed to the return of the surplus assets to the corporation itself as being " according to the course of equity." Ought, therefore, the case to be sent back to the Superior Court to consider and determine that question? It should be sent back if the question for determination be in fact whether, in the existing circumstances, the corporation ought to be wound up and its assets distributed, or whether the prospect of its reorganization on a reasonably sound basis as a going concern is such as to justify the return of the remaining assets to it. But if the corporation is in any event to be wound up, and the question in controversy is simply how it is to be done, whether by the receivers under the direction of the court, or by the corporation itself acting through its stockholders, no sufficient reason is apparent for disturbing the decree. To all appearance the question to be determined does not involve the active continuance of the corporation, but simply the deciding of how the remaining assets shall be distributed, that is, by whom.

There has already been a distribution with their consent of seven dollars ($7) a share to all the stockholders. It seems obvious that the appellant stockholders did not then contemplate a continuance of the business of the corporation. There is nowhere a suggestion that fresh capital is to be furnished for this purpose, although at the hearing below a statement by counsel of some of the appellees that there was no intention to reorganize the corporation afforded an opportunity to disclose such

purpose if it existed. The remaining assets of not much more than 4% of the original capital afford no reasonable basis for a continuance of the business of the corporation. The counsel for the appellants indicated what in his mind was the question before the court for determination when he said, "I have raised a *bona fide* question in regard to the right of the receivers to distribute the balance of the money to the stockholders of the corporation." This same question is stated in the sixth reason of appeal thus: " 6. Because all debts of the Anthony & Cowell Company having been paid, said Superior Court had no power to order a distribution among- the stockholders of the assets in the hands of the receivers." We understand by this that the appellants take the broad ground that when a corporation has not been dissolved the Superior Court has no power, statutory or otherwise, in any case, to order the distribution to its stockholders of the assets remaining in a receiver's hands after the payment of its debts. But there is nothing novel in the distribution by a receiver in a winding up proceeding of surplus assets remaining after the payment of the debts of the corporation to and among the stockholders. See *Verplanck* v. *Mercantile Ins. Co.*, 2 Paige's Ch. Rep. 438, 452 (1831), and *Bank Commissioners* v. *Bank of Buffalo*, 6 Paige's Ch. Rep. 497, 503 (1837).

In Smith on Receiverships, in Section 228, the author says: " In most of the States . . . statutory powers have been granted enabling the courts to interfere . . . in the matter of insolvent corporations, and appoint a receiver to take charge of their affairs, wind up their business and distribute their assets among creditors, shareholders, or those entitled thereto; and this power, in some cases, has been extended to the end of dissolving the corporation and forfeiting its charter privileges."

In the recent case of *Pennsylvania Steel Co.* v. *New York City Ry. Co.*, 198 Fed. Rep. 721, the Circuit Court

of Appeals, Second Circuit, by Noyes, J., on page 736, says: " From the early principles the law of receivership has in recent years rapidly developed and with constantly widening scope. Indeed, in no other branch of equity jurisprudence has there been such an adaptation of equitable principles to the requirements of commercial advancement. This development has taken place through the action of the chancery courts themselves, and, perhaps to a greater extent, through the extension by statutory enactments of the remedial action to subjects not within the original equitable scope. Especially has this been true in respect of the winding up of corporations and the administration of their assets." . . . ." It is perfectly true that the administration of the affairs of a corporation by a receiver and the distribution of its assets, while not destroying its corporate existence, do leave it a mere shell."

In *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, it is held that a court of equity, in the exercise of its general equity jurisdiction, can wind up a corporation at the suit of a minority stockholder and appoint a receiver for that purpose when the corporation has utterly failed of its purpose because of fraudulent mismanagement and misappropriation of its funds in the interest of a majority stockholder. This is an exceptional but a well-considered case. As to the inherent equitable powers of a court relative to the appointment of receivers, see also *Pennsylvania Steel Co.* v. *New York City Ry. Co., supra;* Pomeroy's Equity Jurisprudence, Vol. 5, § 116, and the recent case of *Lowe* v. *R. P. K. Pressed Metal Co.,* 99 Atl. Rep. 1 (Ct.).

As we have reached the conclusion that the Superior Court, under the combination of its inherent and statutory equitable powers, had authority in the present case to order the receivers, as in its discretion was deemed equitable, either to distribute the remaining assets to **and**

among the stockholders or to return them to the corporation itself, and as we are satisfied that the appellants are not objecting to the distribution of the assets, but only to such distribution by the receivers under the order of the court, it does not seem to us, in dealing with the matter in a practical way, that any useful purpose will be served by reversing or disturbing the interlocutory decree appealed from, so far as it orders the distribution of assets. .

No satisfactory reason is urged for reversing that portion of the decree authorizing the sale at auction of "all the remaining receivers' accounts receivable," and similar assets.

(2)    Ordinarily the continuing of refusing to continue the hearing of a motion properly pending before a court is within the discretion of the court, and its action will not be reversed unless there be a clear abuse of such discretion.    As the court below apparently heard the present appellants as fully as if they had filed a formal motion for the discharge of the receivers, we think the action of the Superior Court in refusing a continuance not a sufficient ground for a reversal of the decree.

The appeal is denied and dismissed.


SWEETLAND, J., dissenting.    I fully concur in the construction given in the majority opinion to certain sections of Chapter 213, General Laws, 1909, and the amendments thereto contained in Chapter 425 of the Public Laws, but find myself unable to agree with the application of these laws to the cause before us.    In accordance with the construction which we have given to said statutes, after the receiver of a corporation has paid the debts of the corporation in full, if there is a balance of its funds remaining in his hands, he is bound to pay such balance to the stockholders of the corporation or their legal representatives in case a dissolution of the corporation has been

decreed.  If a dissolution of the corporation has not been decreed, then, as is provided in Chapter 425 of the Public Laws, he is to dispose of such balance under the order of the court "according to the course of equity." The word "equity" is undoubtedly used in its broad sense. In the case before us a dissolution of the corporation had not been decreed, the receivers had paid the debts of the corporation in full, and remaining in their hands were funds of the corporation amounting to about $7,630 and outstanding accounts receivable of the face value of about $6,000. It then became the duty of the Superior Court to determine what disposition of said remaining assets the course of equity required and to make its order accordingly. The receivers petitioned the Superior Court that they be directed to pay the remaining assets to the stockholders. The corporation represented to the Superior Court that at a stockholders' meeting it had been voted to apply to the Superior Court to discharge the receivers and to have the remaining funds returned to the corporation. The corporation requested the Superior Court not to pass upon the receivers' petition to pay the assets to the stockholders until the corporation had an opportunity to present the matter fully before the Superior Court. The justice presiding in the Superior Court, however, either did not have Chapter 425 of the Public Laws called to his attention or failed to take the same view of its provisions which this court has done. Said justice felt that he was not to hear the facts and exercise his judgment, but was obliged, by the mandatory language of Section 29, Chapter 213, General Laws, 1909, to order a distribution of said remaining assets among the stockholders. Hence, without hearing any testimony or giving any consideration to the request of the corporation or to the equities involved in the case, the justice entered the order appealed from. This action conformed with the view which he took of the statutes in question. That

view, in accordance with the construction we have given to those statutes, was erroneous. Before entering his order he should have heard the parties, considered the facts and determined where the equities lay. I find nothing in the record to warrant the conclusion that ''it seems obvious that the appellant stockholders did not then contemplate a continuance of the business of the corporation.'' An opportunity was not given the corporation to present to the court its reasons for requesting the return of said remaining assets to the corporation. There was nothing before the Superior Court and there is nothing before us from which it can be determined what the plans or the future prospects of the corporation are. It is hardly to the point to say '' there is nowhere a suggestion that fresh capital is to be furnished.'' This loses sight of the position of the parties before the court. It was not incumbent upon the appellants to make such suggestion or any other until a case had been presented against them. The receivers were the moving parties. It was upon them to establish that equity required that the remaining assets should be turned over to the stockholders, and not returned to the corporation, where such remaining assets naturally belonged. The record shows that this the receivers did not even attempt to do. In argument counsel for the appellees presents to us his conjecture or suspicion that the corporation desires to use some of these assets for the payment of the fee of its counsel and its expenses incurred in the course of the litigation over the receivership. If such expenses were reasonably incurred it cannot be said conclusively, before hearing, that such payments would not be equitable. This is but one of many considerations as to which it is impossible without hearing to say where the course of equity lies.

I am of the opinion that the appeal should be sustained and the decree appealed from reversed.

Johnson, C. J., concurs in the opinion of Sweetland, J.

*Greenough, Easton & Cross,* for Anthony & Cowell, Company, Oscar G. Thomas, John A. Cowell.

*. Eliot G. Parkhurst, Edward P. Jastram, Edwards & Angell,* for receivers and nine stockholders.